UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>PATRICK JAMES and<br>EDWARD JAMES,<br><br>                   Defendants. | Case No.: 26-CR-29 (AT) |

**DEFENDANT PATRICK JAMES'S**
**MOTION FOR A BILL OF PARTICULARS**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ...................................................................................................................... 3

LEGAL STANDARD .............................................................................................................. 4

ARGUMENT ........................................................................................................................... 6

I.      The Government Should be Required to Identify the Alleged Co-Conspirators and
        Enterprise Members ................................................................................................... 7

II.     The Government Should be Ordered to Identify the Financial Institutions
        Allegedly Affected or Defrauded, Along With Any Other Alleged Victims and
        Third Parties ............................................................................................................ 12

III.    The Government Should be Ordered to Identify the Particular False or Misleading
        Statements or Omissions ......................................................................................... 15

CONCLUSION ..................................................................................................................... 21

## TABLE OF AUTHORITIES

**Page**

### Cases

*In re First Brands Group, LLC*,
  No. 25-90399 (Bankr. S.D. Tex.) ........................................................................................12

*United States v. Akhavan*,
  No. 20 Cr. 188 (JSR), 2020 WL 2555333 (S.D.N.Y. May 20, 2020)................................10, 11

*United States v. Barnes*,
  158 F.3d 662 (2d Cir. 1998), *abrogated on other grounds by United States v.
  Thomas*, 274 F.3d 655 (2d Cir. 2001) ......................................................................................6, 10

*United States v. Barrett*,
  153 F. Supp. 3d 552 (E.D.N.Y. 2015)........................................................................................10

*United States v. Barrett*,
  824 F. Supp. 2d 419 (E.D.N.Y. 2011)........................................................................................11

*United States v. Bennett*,
  No. SA Cr. 03-25 (B) AHS, 2006 WL 8435170 (C.D. Cal. May 24, 2006) ...........................13

*United States v. Bin Laden*,
  92 F. Supp. 2d 225 (S.D.N.Y. 2000), *aff'd*, 552 F.3d 93 (2d Cir. 2008) ...........................5, 6, 8

*United States v. Bortnovsky*,
  820 F.2d 572 (2d Cir. 1987) ................................................................ 5, 7, 8, 11, 12, 15, 17, 20

*United States v. Cave*,
  No. 18 Cr. 689 (AT), 2019 WL 2764081, at *3 (S.D.N.Y. July 1, 2019) ...............................20

*United States v. Clarkson Auto Elec., Inc.*,
  No. 10 Cr. 611G, 2014 WL 3906324 (W.D.N.Y. Aug. 8, 2014) ...............................................5

*United States v. Davidoff*,
  845 F.2d 1151 (2d Cir. 1988) .........................................................................................6, 8, 15

*United States v. Drivas*,
  No. 10 Cr. 771 (NG), 2012 WL 3011023, at *4 (E.D.N.Y. July 19, 2012)..............................20

*United States v. Dupree*,
  No. 10 Cr. 627 (KAM), 2011 WL 5976006 (E.D.N.Y. Nov. 29, 2011) ...................................20

*United States v. Hsia*,
  24 F. Supp. 2d 14 (D.D.C. 1998)..................................................................................................8

ii

*United States v. Ikoli,*
 No. 16 Cr. 148 (AJN), 2017 WL 396681 (S.D.N.Y. Jan. 26, 2017) (Nathan, J.) ..... 5, 6, 11, 20

*United States v. Kahale,*
 789 F. Supp. 2d 359 (E.D.N.Y. 2009)...............................................................................11, 20

*United States v. Kanekar,*
 2020 WL 730353 (E.D.N.Y. Feb. 12, 2020) ...............................................................................8

*United States v. Lino,*
 No. 00 CR. 632(WHP), 2001 WL 8356 (S.D.N.Y. Jan. 2, 2001) ...............................................8

*United States v. Nachamie,*
 91 F. Supp. 2d 565 (S.D.N.Y. 2000)........................................................................ 8, 9, 11, 13

*United States v. Orena,*
 32 F.3d 704 (2d Cir. 1994)......................................................................................................13

*United States v. Pinto-Thomaz,*
 352 F. Supp. 3d 287 (S.D.N.Y. 2018).........................................................................................8

*United States v. Rajaratnam,*
 No. 09 Cr. 1184(RJH), 2010 WL 2788168 (S.D.N.Y. July 13, 2010)....................... 5, 8, 18, 21

*United States v. Rigas,*
 490 F.3d 208 (2d Cir. 2007) ......................................................................................................5

*United States v. Rosenthal,*
 No. 91 Cr. 412 (LLS), 1991 WL 267767 (S.D.N.Y. Dec. 3, 1991) ...........................................8

*United States v. Savin,*
 No. 00 Cr. 45(RWS), 2001 WL 243533 (S.D.N.Y. Mar. 7, 2001) ...........................................8

*United States v. Silver,*
 117 F. Supp. 3d 461 (S.D.N.Y. 2015)......................................................................................19

*United States v. Tournant,*
 No. 22 Cr. 276 (LTS), 2023 WL 8649893 (S.D.N.Y. Dec. 13, 2023) ...............6, 14, 15, 16, 19

*United States v. Trie,*
 21 F. Supp. 2d 7 (D.D.C. 1998).................................................................................................8

*United States v. Vaid,*
 No. 16 Cr. 763 (LGS), 2017 WL 3891695 (S.D.N.Y. Sept. 5, 2017)......................... 17, 18, 19

*United States v. Walsh,*
 194 F.3d 37 (2d Cir. 1999).........................................................................................................5

iii

*United States v. Wang*,
    No. 23 Cr. 118-3 (AT), 2024 WL 1251105 (S.D.N.Y. Mar. 22, 2024) ...................... 5, 6, 14, 16

## **Statutes**

18 U.S.C. 1344 ........................................................................................................................... 13

18 U.S.C. § 20 ............................................................................................................................. 13

18 U.S.C. § 225 ..................................................................................................................... 1, 3, 7, 9

18 U.S.C. § 1343 ........................................................................................................................... 3

18 U.S.C. § 1344 ........................................................................................................................... 3

18 U.S.C. § 1349 ........................................................................................................................... 3

18 U.S.C. § 1956(h) ...................................................................................................................... 3

iv

## PRELIMINARY STATEMENT

The Government has brought charges against Patrick James that expose him to the possibility of prison for the rest of his life, including under a rarely invoked statute, 18 U.S.C. § 225, that carries a ten-year mandatory minimum sentence.  The Indictment in this case alleges four distinct fraud schemes, spanning seven years and hundreds of millions of dollars in transactions.  A case of this magnitude—one in which the Government seeks to brand a man a serial fraudster and take away his liberty for decades—should be the product of a painstaking, independent investigation, reflected in an indictment that lays out the Government's evidence with precision.  That is not what happened here.

Just four months after the United States Attorney's Office issued its first subpoena in this matter, the Government rushed to indict, leaning on an "investigation" conducted principally by the First Brands' own bankruptcy counsel and financial advisors, fomented by third parties with every incentive to inflate the alleged fraud and cast blame on Mr. James rather than acknowledge their own missteps.  The result is a vast but incomplete and lopsided discovery record[1] and an indictment that reads like a summary of bankruptcy court filings—long on conclusory characterization and short on the specifics due process requires.

Mr. James is left to guess at the most basic facts underlying the charges against him: with whom he allegedly conspired, what false statements or fabricated invoices he allegedly made or sponsored, and whom he allegedly victimized.  If the Government cannot supply that information because it has not fully investigated this case, it should say so.  If it can, the Court should order it to do so now.  Due process requires nothing less.

---

[1]  The deficiencies in the Government's investigation and discovery production will be the subject of forthcoming motions.

Specifically, Mr. James seeks an order requiring the Government to particularize the following:

1.      The identities of any alleged co-conspirators (Indictment ¶¶ 2, 13);

2.      The "financial institutions" that were allegedly affected or defrauded by the conduct charged in Counts One through Eight (*id.* ¶¶ 1, 2, 8–10, 12, 16, 22, 39, 47, 51);

3.      The allegedly false and misleading statements, invoices, representations, and omissions the Government alleges were made in furtherance of the schemes charged in Counts One through Eight (*see id.* ¶¶ 1–37); and

4.      The identities of any alleged victims and any other third party described in Count One, including the "lenders and financing partners," (*id.* ¶ 2), "factoring partners," (*id.* ¶ 12), "inventory financers," (*id.* ¶ 22), and "creditors, auditors, and potential purchasers," (*id.* ¶ 34).

A bill of particulars is necessary because the Indictment fails to give Mr. James the notice to which he is entitled under the law.  Instead of identifying the specific acts that the Government alleges were criminal and providing the information necessary for Mr. James to prepare for trial, the Indictment offers only broad categories and a handful of anecdotal examples.  As set forth in further detail below, the Indictment's allegations fall well short of what the Constitution and binding Second Circuit precedent require.[2]

---

[2]   As described in the declaration of Scott Hartman filed with this motion, pursuant to Local Criminal Rule 16.1, counsel for Mr. James conferred with Government counsel in a good faith effort to resolve the issues raised by this motion without Court intervention, but the parties were unable to reach agreement.  Specifically, on March 18, 2026, Mr. James, by counsel, served a detailed letter requesting that the Government voluntarily particularize this information.  *See* Dkt. No. 43-2.  The Government's April 3, 2026, response declined twenty-one of the defense's thirty-four requests and offered only qualified concessions on the remaining requests, accompanied by language disclaiming any limit on its "allegations or its proof" at trial.  *See* Dkt. No. 43-4.

## <u>BACKGROUND</u>

On January 27, 2026, a grand jury returned a nine-count Indictment against Patrick James and Edward James, charging: (1) continuing financial crimes enterprise, 18 U.S.C. § 225 (Count One); (2) conspiracy to commit wire fraud affecting a financial institution and bank fraud, 18 U.S.C. § 1349 (Count Two); (3) wire fraud affecting a financial institution, 18 U.S.C. § 1343 (Counts Three, Four, Six, and Eight); (4) bank fraud, 18 U.S.C. § 1344 (Counts Five and Seven); and (5) conspiracy to commit money laundering, 18 U.S.C. § 1956(h) (Count Nine).

The Indictment alleges that Defendants "perpetrated a series of fraudulent schemes" involving various First Brands financing arrangements in what Count One calls a "continuing financial crimes enterprise," *id.* ¶ 2, but it never says who committed these schemes, who was harmed by them, or what, specifically, was misrepresented. *See, e.g., id.* ¶ 47. Rather than naming alleged co-conspirators, the Indictment gestures at an undefined class of "other executives with whom [Defendants] conspired." *Id.* ¶ 5. Rather than identifying victims, it recites a list of undifferentiated categories—"lenders and financing partners," *id.* ¶ 2; "at least four factoring partners," *id.* ¶ 12; "accounts payable factoring partners," *id.* ¶ 16; "at least three inventory financers," *id.* ¶ 22; and "creditors, auditors, and potential purchasers," *id.* ¶ 34—without ever identifying a single one of them by name. And rather than identifying the false statements the Government intends to prove, the Indictment alleges only that invoices were "fake[] and falsely inflated," *id.* ¶ 2, without identifying a single such invoice, and that First Brands made "financial statement adjustments" to mislead lenders, *id.* ¶¶ 30–31, without identifying a single adjustment or quantifying its effect.

Even the timeline does not hold together. Count One alleges that the continuing financial crimes enterprise began "in or about 2018" and was predicated in part on the conduct charged in

"Counts Three through Eight." *Id.* ¶ 37. Yet none of those predicate counts alleges conduct beginning before 2020: Counts Three through Eight allege conduct beginning "in or about 2020," *id.* ¶¶ 43, 45, 47, 49, 53, and Count Nine alleges conduct beginning "in or about 2022," *id.* ¶ 55. The Indictment never explains—and nothing in it resolves—how a "continuing" enterprise stretching back to 2018 can rest entirely on predicate conduct that, by the Government's own telling, did not begin until two to four years later.

The Government's refusal to supply any details that might clarify these vague allegations has only compounded the problem. To date, the Government has produced more than 16.9 million pages of discovery—over 4.5 million documents from more than 130 third parties. *See generally* Dkt. No. 43 at 1–2. Faced with an Indictment that omits the basic facts underlying its most serious allegations, and a production far larger than in most complex civil cases, Mr. James asked the Government to provide a bill of particulars identifying the alleged co-conspirators and victims, and the specific invoices, financial statements, and other communications it contends are fraudulent, among other essential facts. *See* Dkt. No. 43-2 at 1–9. The Government refused, asserting that Mr. James "is not entitled" to the identities of the alleged co-conspirators or victims, the financial institutions "affected by [his] fraud," or even the specific instances of fraud underlying the charges against him. *See* Dkt. No. 43-4 at 1–4.

## **LEGAL STANDARD**

A bill of particulars is warranted when an indictment is "insufficient to permit the preparation of an adequate defense." *United States v. Rigas*, 490 F.3d 208, 237 (2d Cir. 2007) (citation omitted). "[T]he bill's purpose is to 'advise the defendant of the specific acts of which he is accused,'" *id*. (quoting *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999)); it "enables a

defendant to prepare for trial [and] to prevent surprise," *United States v. Rajaratnam*, No. 09 Cr. 1184(RJH), 2010 WL 2788168, at *1 (S.D.N.Y. July 13, 2010) (quoting *Rigas*, 490 F.3d at 237).

As this Court has previously recognized, "[i]n complex conspiracy cases like this one, the potential for unfair surprise and the difficulty of preparing a defense are amplified." *United States v. Wang*, No. 23 Cr. 118-3 (AT), 2024 WL 1251105, at *5 (S.D.N.Y. Mar. 22, 2024) (internal quotation marks and citation omitted). Bills of particulars are therefore frequently ordered in "document-heavy conspiracy cases" in which the government has yet to identify the "transactions it seeks to prove" were unlawful. *United States v. Clarkson Auto Elec., Inc.*, No. 10 Cr. 6111G, 2014 WL 3906324, at *3 (W.D.N.Y. Aug. 8, 2014).

And although the information necessary to give a defendant fair notice may be provided through discovery or other channels, "the Government cannot meet its burden by dumping voluminous discovery upon the defendant[] without any sort of guidance." *United States v. Ikoli*, No. 16 Cr. 148 (AJN), 2017 WL 396681, at *5 (S.D.N.Y. Jan. 26, 2017) (Nathan, J.) (citing *United States v. Bortnovsky*, 820 F.2d 572, 575 (2d Cir. 1987)). "It is no solution to rely solely on the quantity of information disclosed by the government; sometimes, the large volume of material disclosed is precisely what necessitates a bill of particulars." *United States v. Bin Laden*, 92 F. Supp. 2d 225, 234 (S.D.N.Y. 2000), *aff'd*, 552 F.3d 93 (2d Cir. 2008).

In determining whether to order a bill of particulars, courts consider "the clarity of the indictment; the duration and breadth of the alleged conspiracy, *i.e.*, the complexity of the crime charged; whether the government has provided adequate notice of the particulars; the potential danger to co-conspirators, witnesses, or victims; and the nature of the alleged criminal conduct." *Wang*, 2024 WL 1251105, at *5 (quoting *United States v. Tournant*, No. 22 Cr. 276 (LTS), 2023 WL 8649893, at *2 (S.D.N.Y. Dec. 13, 2023)).

"The length of the indictment is not dispositive if the defendant is still left with an insufficient understanding of the parameters of the scheme with which she is charged." *Wang*, 2024 WL 1251105, at *3. Although a bill of particulars is not a tool for the defense to learn of the government's evidence, if the requested information is necessary to the preparation of the defense, "it is of no consequence that the requested information . . . [requires] the disclosure of evidence or the theory of the prosecution." *United States v. Barnes*, 158 F.3d 662, 665 (2d Cir. 1998), *abrogated on other grounds by United States v. Thomas*, 274 F.3d 655 (2d Cir. 2001).

The decision to grant a motion for a bill of particulars "is within the sound discretion of the district court." *United States v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir. 1988). Because "[t]he need for a bill of particulars is highly fact-dependent," courts have observed that "precedents furnish little help in disposing of requests for bills of particulars in criminal cases." *Tournant*, 2023 WL 8649893, at *2 (quoting *Bin Laden*, 92 F. Supp. 2d at 334). At bottom, the government has the "burden of providing a defendant with sufficient notice of the charges." *Ikoli*, 2017 WL 396681, at *5.

## ARGUMENT

This case presents the precise circumstances that courts in this Circuit have recognized as requiring a bill of particulars. The Indictment charges nine counts arising out of four alleged fraud schemes—accounts receivable factoring, accounts payable supply chain financing, off-balance-sheet financing, and financial statement manipulation—spanning approximately seven years, implicating an undisclosed number of financial institutions, co-conspirators, false statements, and fabricated invoices, and yielding more than 16.9 million pages of discovery from more than 130 third parties. As set forth more fully below, disclosure of the foregoing items is necessary to enable Mr. James "to prepare for trial" and "to prevent surprise." *Bortnovsky*, 820 F.2d at 574.

I.      **The Government Should be Required to Identify the Alleged Co-Conspirators and Enterprise Members**

Consistent with the rushed and derivative nature of the investigation underlying this Indictment, the Government has never identified the most basic fact underlying Count One: who, specifically, it contends acted in concert with Mr. James. That omission is not merely a trial-preparation inconvenience—it goes to whether the statutory elements of Count One can be proven at all, and to the mandatory minimum sentence Mr. James faces. Count One requires the Government to prove a series of violations "committed by at least 4 persons acting in concert." 18 U.S.C. § 225(a)(1), (b). Conviction on that count alone carries a ten-year mandatory minimum. Yet the Indictment never identifies those four (or more) persons, never explains whether they overlap with the "other executives," "co-conspirators," or members of the "inner circle" referenced elsewhere in the Indictment, (Indictment ¶¶ 2, 5, 13, 18, 34), and never clarifies whether the same group of persons is alleged to have acted in concert with Mr. James across Counts Three through Eight or whether different, overlapping, or entirely distinct groups are alleged as to each count. Mr. James cannot test whether the Government can satisfy this threshold statutory element—let alone prepare a defense to it—without knowing who the Government contends these persons are. Where, as here, the identity and number of alleged co-conspirators bear directly on an element of the charged offense and on a mandatory minimum sentence, the case for disclosure is at its strongest.

Courts have widely recognized that a bill of particulars is especially appropriate in cases that involve alleged conspiracies to commit fraud and other financial crimes. *See, e.g.*, *Davidoff*, 845 F.2d at 1154–55 (conspiracy); *Bortnovsky*, 820 F.2d at 574–75 (conspiracy to defraud government agencies); *United States v. Nachamie*, 91 F. Supp. 2d 565, 573 (S.D.N.Y. 2000) (conspiracy to commit Medicare fraud); *United States v. Trie*, 21 F. Supp. 2d 7, 21–22 (D.D.C.

1998) (conspiracy to impair and impede Federal Election Commission ""with straw-donor scheme); *United States v. Hsia*, 24 F. Supp. 2d 14, 31 (D.D.C. 1998) (same).

For that reason, "[r]equests for names of unindicted co-conspirators are fairly common and often are granted by district courts." *United States v. Lino*, No. 00 CR. 632(WHP), 2001 WL 8356, at *12 (S.D.N.Y. Jan. 2, 2001); *accord United States v. Kanekar*, 2020 WL 730353, at *6 (E.D.N.Y. Feb. 12, 2020) (same). Indeed, courts in this District routinely grant such requests. *See, e.g.*, *United States v. Pinto-Thomaz*, 352 F. Supp. 3d 287, 303 (S.D.N.Y. 2018) (granting "bill of particulars as to the identities of unindicted co-conspirators"); *Rajaratnam*, 2010 WL 2788168, at *1 (ordering government to identify tipper in insider-trading conspiracy); *United States v. Savin*, No. 00 Cr. 45(RWS), 2001 WL 243533, at *5 (S.D.N.Y. Mar. 7, 2001) (finding defendant was "entitled to a list of known unindicted co-conspirators"); *Bin Laden*, 92 F. Supp. 2d at 241 (ordering government to provide "the identities, including all aliases and code names, of all unindicted co-conspirators to whom it will refer at trial"); *United States v. Rosenthal*, No. 91 Cr. 412 (LLS), 1991 WL 267767, at *7 (S.D.N.Y. Dec. 3, 1991) ("To the extent that the government knows of other persons who took part in the charged offenses with the intent of furthering the illegal goals alleged, the government is ordered to disclose their identities and a general description of each of their alleged roles.").

Courts in this Circuit weigh six factors in determining whether to order the Government to identify unindicted co-conspirators "(1) the number of co-conspirators; (2) the duration and breadth of the alleged conspiracy; (3) whether the Government otherwise has provided adequate notice of the particulars; (4) the volume of pretrial disclosure; (5) the potential danger to co-conspirators and the nature of the alleged criminal conduct; and (6) the potential harm to the

8

Government's investigation." *Nachamie*, 91 F. Supp. 2d at 572. Each factor weighs in favor of disclosure here.

*First*, the number of co-conspirators is not merely unspecified—it is unknowable from the face of the Indictment, and the stakes of that uncertainty could not be higher. Count One requires the Government to prove a "continuing financial crimes enterprise" involving "a series of violations . . . committed by at least 4 persons acting in concert," 18 U.S.C. § 225(a)(1), (b), a threshold element carrying a ten-year mandatory minimum, yet the Indictment never says who those four (or more) persons are. Counts Two and Nine likewise charge Mr. James with conspiring with his co-defendant "and others known and unknown," Indictment ¶¶ 39–41, 55–56, without even estimating how many "others" the Government has in mind. And the Indictment never clarifies whether the "four persons" required by Count One are the same individuals as the "others known and unknown" in Counts Two and Nine, the same unnamed "co-conspirators" and members of the "inner circle" invoked elsewhere, (*id.* ¶¶ 2, 5, 13, 18, 34), or an entirely different, unidentified group—nor whether the same set of persons is alleged to have acted in concert with Mr. James across each of the substantive wire fraud and bank fraud counts in Counts Three through Eight, or whether different, overlapping, or distinct groups are alleged as to each. Mr. James is not simply missing a list of names for an otherwise defined group; he cannot even determine the size or outer boundaries of the conspiracy the Government has charged him with leading. *See United States v. Barrett*, 153 F. Supp. 3d 552, 572–73 (E.D.N.Y. 2015) (ordering bill of particulars identifying unindicted co-conspirators where indictment's allegations "might involve the same co-conspirators, entirely different co-conspirators, or different subsets of the same general group" because "[t]he potential for unfair surprise looms large").

*Second*, the duration and breadth of the alleged conspiracies are extensive: Counts One and Two span "at least" 2018 through 2025, (Indictment ¶¶ 1, 39), and Count Nine spans "at least" 2022 through 2025, (*id.* ¶ 55).  *See United States v. Akhavan*, No. 20 Cr. 188 (JSR), 2020 WL 2555333, at *2 (S.D.N.Y. May 20, 2020) (ordering bill of particulars identifying co-conspirators in three-year conspiracy and noting "[t]his is precisely the type of 'conspiracy count cover[ing] a complex series of events over a number of years' where a bill of particulars identifying the co-conspirators is appropriate" (quoting *United States v. Barnes*, 158 F.3d 662, 666 (2d Cir. 1998))).

*Third*, the Government has not provided adequate notice of the membership in the alleged conspiracies through other means.  Although the Government has directed the defense to a separate criminal case—*United States v. Brumbergs and Graham*, 26 Cr. 25 (AT)—the Indictment itself references multiple other "senior executives," "co-conspirators," members of Patrick James's "inner circle," and unnamed "others" with whom the defendants allegedly acted in concert. (Indictment ¶¶ 2, 5, 13, 18, 34, 39–41).  Mr. James should not be left to speculate about who the Government might consider to be his co-conspirators particularly where, as here, the number and identity of the conspirators has significant sentencing implications in light of Count One.

*Fourth*, the volume of pretrial disclosure has been enormous: the Government has produced more than 16.9 million pages of discovery, totaling more than 4.5 million documents from more than 130 third parties.  Courts have compelled disclosure of identities in cases with many fewer documents to review.  *See Bortnovsky*, 820 F.2d at 574–75 (stating that the government "did not fulfill its obligation" to "reveal crucial information" when it "provid[ed] mountains [4,000] documents"); *Ikoli*, 2017 WL 396681, at *6 (rejecting government's contention that it sufficiently apprised defendants by providing "thousands of pages of discovery" because "the Government cannot meet its burden by dumping voluminous discovery upon the defendants without any sort

10

of guidance"). This factor, therefore, weighs decisively in favor of disclosure. *See Akhavan*, 2020 WL 2555333, at *2 (granting bill of particulars where "the volume of discovery produced to the defendants is so large that, combined with the complexity of the alleged scheme, it may nonetheless be practically impossible for the defendants to ascertain whom the Government considers a co-conspirator and whom it does not"); *see also United States v. Barrett*, 824 F. Supp. 2d 419, 443 (E.D.N.Y. 2011) ("The fourth factor considers both whether the government has 'provided significant detail to the defendants' and whether the government has 'unfairly overwhelmed [defendants] with mountains of unorganized discovery.'" (quoting *United States v. Kahale*, 789 F. Supp. 2d 359, 372 (E.D.N.Y. 2009))).

*Finally*, the fifth and sixth factors—potential danger to co-conspirators and harm to the Government's investigation—provide no basis for withholding particulars in this case. This case involves alleged financial fraud, not narcotics trafficking or violent crime, and the Government has not suggested that disclosure of co-conspirator identities would pose any danger to any witness. *See Nachamie*, 91 F. Supp. 2d at 573 (holding that "there is no legitimate concern that disclosing the names of unindicted co-conspirators will endanger those individuals or compromise the Government's investigation" because "this case charges Medicare fraud—not narcotics trafficking or murder—and defendants must be provided with the names of known unindicted co-conspirators"). Indeed, the Government has directed Defendants to *Brumbergs and Graham* and disclosed to Defendants limited interview records from more than a dozen other witnesses identified by name—without providing particulars as to which of these witnesses are the co-conspirators alleged in particular counts of the Indictment—so there is demonstrably no risk related to identifying the co-conspirators with particularity. This case has also been the subject of significant public attention, and First Brands' financial collapse has been the subject of an ongoing

11

Chapter 11 proceeding in the Southern District of Texas, which has been publicly litigated since October 2025. *See In re First Brands Group, LLC*, No. 25-90399 (Bankr. S.D. Tex.). Nothing the Government would disclose in a bill of particulars could conceivably harm its investigation.

Nor is the Government's refusal saved by a commitment to an alternative form of disclosure. In *United States v. Spencer*, this Court denied a bill of particulars for co-conspirator identification in a RICO case because the Government had committed to provide an enterprise letter at least twelve weeks before trial—a commitment the Court found constituted an "acceptable alternate form" of disclosure under *Bortnovsky*. No. 20 Cr. 78-1 (AT), 2022 WL 1270905, at *1– 2 (S.D.N.Y. Apr. 28, 2022) (quoting *Bortnovsky*, 820 F.2d at 574). The Government has made no such commitment here. It has not represented that an expanded particularization is forthcoming; to the contrary, it has stated that Mr. James "is not entitled" to the identities of the alleged co-conspirators. Dkt. No. 43-4 at 2. The absence of any analogous alternate-form commitment establishes that a bill of particulars is required.

Because all six factors weigh in favor of particularization, the Court should order the Government to identify the unindicted co-conspirators and members of the alleged "continuing financial crimes enterprise." *See Nachamie*, 91 F. Supp. 2d at 572–73 (granting a request for names of unindicted co-conspirators in a healthcare fraud case where there were eight defendants and an unknown number of unindicted co-conspirators, the conspiracy lasted over three years, and the government produced over 200,000 pages of discovery).

II.    **The Government Should be Ordered to Identify the Financial Institutions Allegedly Affected or Defrauded, Along With Any Other Alleged Victims and Third Parties**

The same rushed and derivative investigation that leaves Mr. James guessing at his alleged co-conspirators leaves him guessing at his alleged victims. The Indictment alleges only that First Brands defrauded "at least four factoring partners," (Indictment ¶ 12), alongside vague, undefined

categories of "lenders and financing partners," "inventory financers," and "creditors, auditors, and potential purchasers," (*id.* ¶¶ 2, 22, 34).  Yet the Government's own discovery identifies more than one hundred institutional lenders, factors, and creditors doing business with First Brands.  That gap is itself a symptom of an investigation that copied the broad strokes of the bankruptcy record without doing the work to determine, with precision, whom Mr. James is actually alleged to have defrauded.

Counts One through Eight of the Indictment require the Government to establish that the conduct underlying the allegedly fraudulent schemes "affected" or "defrauded" a "financial institution," as defined by 18 U.S.C. § 20.  *See United States v. Bennett*, No. SA Cr. 03-25 (B) AHS, 2006 WL 8435170, at *3 (C.D. Cal. May 24, 2006) ("According to the express language of § 225(b) and 18 U.S.C. 1344 (bank fraud statute), the mail fraud, wire fraud, and bank fraud violations in the series must affect a financial institution.").  None of those financial institutions, however, is identified in the Indictment, even though an "indictment should name . . . the persons defrauded when they are known by the government." *United States v. Orena*, 32 F.3d 704, 714–15 (2d Cir. 1994) (citation omitted).  Mr. James is entitled to this information in a bill of particulars. *See Wang*, 2024 WL 1251105, at *5; *Tournant*, 2023 WL 8649893, at *4.

In response to Mr. James's March 18 letter, the Government identified eleven financial institutions while expressly noting that its list was non-exhaustive and that its "response[] should [not] be construed as limiting the Government's allegations or its proof." Dkt. No. 43-4 at 1 n.1. But a non-exhaustive list of financial institution victims—accompanied by an explicit reservation that the Government may introduce evidence of additional victims at trial—does not provide Mr. James with the particularity required to prepare his defense or assess the true scope of the charges against him.

As this Court observed in *Wang*, "[s]pecifying [a subset of entities]—when a complex web of [far more] accounts and entities are allegedly implicated by the scheme—does not provide [the defendant] with enough information about the accounts and entities at issue." 2024 WL 1251105, at *5 (internal quotation marks omitted). The same principle applies here. Without knowing the full universe of financial institutions the Government contends were "affected" or "defrauded," Mr. James cannot prepare to address the predicate elements of the wire fraud and bank fraud counts, much less prevent surprise at trial. Accordingly, the Government should be ordered to provide the Defense with a bill of particulars identifying the "financial institutions" allegedly defrauded or "affected" by the conduct alleged in the Indictment.

The Indictment furthermore identifies additional alleged victims and third parties beyond the financial institutions discussed above. Here, as in *Tournant*, which this Court cited extensively in *Wang*, requiring the defendant to extrapolate from a limited set of illustrative examples "the full set of [victims], and an unidentified set of potential [counterparties]" to "identify the scope of the alleged scheme and prepare accordingly would be a daunting and potentially impossible undertaking." *Tournant*, 2023 WL 8649893, at *4. The Indictment here describes the victims of the alleged schemes in the broadest possible terms, referring to them as "lenders and financing partners," (Indictment ¶ 2); "factoring partners," (*id.* ¶ 12); "inventory financers," (*id.* ¶ 22); or "creditors, auditors, and potential purchasers," (*id.* ¶ 34). In response to Mr. James's request for more particularized information, the Government identified certain counterparties while noting that its "discovery productions to the defense provide ample additional detail regarding how the alleged frauds harmed others." Dkt. No. 43-4 at 2.

The Government, however, "may not . . . automatically rel[y]" on its production of discovery materials "as an adequate substitute for a straightforward identification in a bill of

14

particulars of the identity of victims of offenses that the prosecution intends to prove." *United States v. Davidoff*, 845 F.2d 1151, 1155 (2d Cir. 1988). In *Davidoff*, the Second Circuit held that the district court abused its discretion by denying a request for a bill of particulars identifying "at least the victims of discrete [] schemes that the prosecution intended to prove." *Id.* at 1154; *see also Bortnovsky*, 820 F.2d at 573–74 (reversing for failure to provide bill of particulars where government did not identify which insurance claims were falsified). Here, the voluminous discovery produced thus far identifies over one hundred lenders, factors, financers, and creditors— all potential "victims" of the alleged scheme—without enabling Mr. James to determine which entities the Government intends to prove were actually defrauded.

As was the case in *Tournant*, "the lengthy Indictment and voluminous discovery produced thus far . . . cut against the Government's position that a particularized list of victims is unnecessary." 2023 WL 8649893, at *4. Here, as there, "the defendant [is] charged with fraud based on individual misrepresentations made to particular investors, and [must] identify the victims out of over 100 sophisticated institutional and individual" lenders and financers "spread across" multiple financing programs. *Wang*, 2024 WL 1251105, at *3 (citing *Tournant*, 2023 WL 8649893, at *1, 3–4). Because the Government's partial disclosures cannot give Mr. James a reliable picture of the scope of the alleged fraud or the universe of counterparties he must be prepared to address at trial, the Court should order the Government to identify, with specificity, the victims of each alleged scheme it intends to prove.

### III. The Government Should be Ordered to Identify the Particular False or Misleading Statements or Omissions

The Government's failure to identify specific false statements is the clearest symptom of the underlying problem: an investigation borrowed wholesale from bankruptcy counsel's conclusory allegations, never independently verified down to the level of a specific invoice,

15

statement, or omission. The Government should be directed to identify the allegedly fraudulent statements, representations, and omissions on which it intends to rely at trial, including, but not limited to, any allegedly: (1) fictitious, inflated, or double-pledged invoices submitted to third-party factors; (2) fraudulent representations regarding the nature, value, and existence of First Brands' accounts payable submitted to supply-chain financers; (3) false or misleading representations concerning the existence, nature, or value of collateral submitted to an Off-Sheet Lender or senior lender; and (4) false or misleading representations concerning First Brands' financial statements, borrowing base certificates, or audit certifications provided to asset-backed lenders or outside auditors.

There can be no question that this information is "necessary" for Mr. James's defense. The alleged fraud scheme spans approximately seven years, encompasses four distinct fraud mechanisms directed at multiple categories of counterparties, and generated billions of dollars in allegedly fraudulent transactions across dozens of financing programs. During that period, First Brands and its subsidiaries submitted tens of thousands of invoices, financial statements, borrowing base certificates, inventory schedules, and other representations to lenders, factors, and auditors. Without identification of which specific statements, invoices, and omissions the Government contends were false, Mr. James cannot begin to prepare to contest the Government's proof on the most basic elements of the charged offenses—falsity and materiality.

Nor can the Government defend its silence on the theory that the discovery itself supplies adequate notice. The productions to date of massive amounts of data without any indication of which specific invoices, financial statements, or communications the Government considers false does not facilitate trial preparation; it impedes it. Indeed, when Mr. James asked the Government to identify the fraudulent invoices underlying the accounts-receivable factoring scheme, the

16

Government's only response was to direct him to two undifferentiated Bates ranges of raw factoring data—not to identify a single fraudulent invoice by number, date, or amount. *See* Dkt. No. 43-4 at 2. The Government has even refused to confirm that it has produced the universe of invoices that it intends to argue to the jury were false or the original, allegedly true, corresponding invoices. *See* Dkt. No. 43-5 at 2 ("Please confirm in writing that, to the extent you intend to assert at trial that any invoices were misdescribed or fabricated, both the original invoice and the alleged misstatement or fabrication have been produced to us. If you do not confirm, we will assume the answer is no."); Ex. A  (Apr. 17, 2026 Letter) at 2 ("With respect to your specific request concerning invoices, the Government has provided to you what the company has produced.").

"In cases involving fraud, courts have required the government to specify through a bill of particulars which documents or transactions it intends to prove are fraudulent if this information is not ascertainable; otherwise, in effect, 'the burden of proof impermissibly [may] shift[]' to the defendant to prove the documents or transactions are not fraudulent." *United States v. Vaid*, No. 16 Cr. 763 (LGS), 2017 WL 3891695, at *11 (S.D.N.Y. Sept. 5, 2017) (quoting *Bortnovsky*, 820 F.2d at 574–75). For example, in *United States v. Connolly*, which involved allegations of false LIBOR submissions, the court required the Government to identify all of the allegedly false submissions, reasoning that "fundamental fairness" required providing this information to defendants to prepare for trial:

> Defendants have a perfect right to analyze, prior to trial, trade data with which the jury will be presented, in order to verify its accuracy and explore other issues, including issues that would relate, not to the Government's case, but to the defense. Fundamental fairness demands that, in a case of this nature, and with this volume of potentially relevant data, the Government identify a manageable subset within the universe of data that is actually relevant to the courtroom presentation of this case.

No. 16 Cr. 00370 (CM), 2017 WL 2537808, at *5–6 (S.D.N.Y. May 24, 2017).

The same reasoning applies here.  In response to Mr. James's request for particular misstatements or omissions, the Government directed defense counsel to two Bates ranges purportedly containing a "listing of factored receivables" and "Vizion data"—raw data comprising tens of thousands of records—without identifying the invoices it contends were fraudulent.  Dkt. No. 43-4 at 2.  Directing Mr. James to sift through tens of thousands of pages of factoring records to identify the specific invoices the Government intends to prove were fictitious or inflated at trial is precisely the approach the Second Circuit condemned in *Bortnovsky* as an impermissible shifting of the burden of proof.  *See* 820 F.2d at 574–75.  As the court explained in *Connolly*, the "sheer volume" of data produced, "coupled with the lack of temporal proximity between the dates alleged in the indictment," "means that it will not do to say, 'The indictment is more fulsome than usual; the underlying data has all been produced, and anyway the defendants know what they said and did.'"  2017 WL 2537808, at *5.

This Court's decision in *Wang* is squarely on point.  There, in a complex multi-year fraud conspiracy involving billions of dollars moved through "more than approximately 500 accounts held in the names of at least 80 different entities or individuals," 2024 WL 1251105, at *1, this Court held that "the Government cannot rely on discovery where, as here, the 'large volume of material disclosed' forces the defendant to 'attempt to guess at which transactions, during a [five]-year period, were allegedly improper.'"  *Id.* at *5 (quoting *Rajaratnam*, 2010 WL 2788168, at *2).  The Court accordingly ordered the Government to identify the specific accounts and entities at issue, finding that the indictment's illustrative examples, even where accompanied by "specified dollar amounts and beneficiaries[,]" did not give the defendant adequate notice of the "parameters of the scheme."  *Id.* at *4–5 (quoting *Tournant*, 2023 WL 8649893, at *4); *see also United States v. Silver*, 117 F. Supp. 3d 461, 470–71 (S.D.N.Y. 2015) (ordering bill of particulars where the

18

indictment could implicate "hundreds of thousands" of wire transmissions and lacked "specific information regarding the dates of the allegedly offending mailings and wire transmissions"). The same is true here, only more so. The Indictment alleges a "continuing financial crimes enterprise" spanning seven years and encompassing four distinct fraud mechanisms; the Government has produced more than 16.9 million pages of discovery from over 130 third parties; and First Brands and its subsidiaries submitted tens of thousands of invoices, financial statements, borrowing base certificates, and other representations to lenders, factors, and auditors during the relevant period. The few examples in the Indictment do not put Mr. James on notice of which transactions and representations the Government intends to prove were fraudulent.

In *Tournant*, the court denied a similar request for particularization of false statements only because the Government had specifically identified the universe of allegedly fraudulent documents, including 152 altered reports, 23 consultant reports, and 721 investor presentations, by category. *See Tournant*, 2023 WL 8649893, at *4. That critical distinguishing fact is absent here. Rather than identify the documents it contends are fraudulent, the Government has done the opposite: it has pointed Mr. James to two Bates ranges of raw factoring data and instructed him to find the alleged fraud himself. Dkt. No. 43-4 at 2 ("[T]he Government directs you to the records bearing bates numbers FBG_DOJ_00026057 through FBG_DOJ_00026078, which include a listing of factored receivables and First Brands Group ("FBG") Vizion data for factored receivables.").[3] Where, as in *Bortnovsky*, the Government has refused to identify the specific transactions and documents alleged to be fraudulent, a bill of particulars is required. *See United*

---

[3]    FBG_DOJ_00026057 through FBG_DOJ_00026078 consists of 22 different Excel spreadsheets. These spreadsheets are voluminous, consisting of multiple sheets per workbook. For example, FBG_DOJ_00026058, produced to Mr. James as SDNY_JAMES_00184537, contains a sheet with *814,532* rows of data and another sheet with *784,429* rows of data.

*States v. Cave*, No. 18 Cr. 689 (AT), 2019 WL 2764081, at *3 (S.D.N.Y. July 1, 2019) (noting that *Bortnovsky* requires a bill of particulars where the defendant would be "forced to establish their innocence by proving that eight of the burglaries put before the jury, which even the Government was uncertain were fake, actually occurred" (quoting *Bortnovsky*, 820 F.2d at 574–75)).

Finally, this is not a case where the government has alleged that *every* transaction during a certain time period was fraudulent.  *See, e.g.*, *United States v. Dupree*, No. 10 Cr. 627 (KAM), 2011 WL 5976006, at *7 (E.D.N.Y. Nov. 29, 2011) (rejecting request for additional information regarding transactions in part because the government alleged that the fraud "permeated and sustained" the entire business and "all of the accounts receivable figures on all financial statements . . . [were] false"); *United States v. Drivas*, No. 10 Cr. 771 (NG), 2012 WL 3011023, at *4 (E.D.N.Y. July 19, 2012) (denying request to identify fraudulent transactions because the government had alleged that all transactions billed to Medicare were fraudulent).  To the contrary, the Indictment identifies only illustrative examples—leaving Mr. James to guess at which of the tens of thousands of invoices, statements, and representations in the discovery the Government intends to prove at trial were fraudulent.  This case, therefore, "present[s] the quintessential 'needle in a haystack' problem" and requires Mr. James to "sift[] through thousands of legitimate transactions in an attempt to discover which transactions the government sought to prove were fraudulent." *Kahale*, 789 F. Supp. 2d at 376; *see also, e.g.*, *Ikoli*, 2017 WL 396681, at *5 (bank fraud indictment "arguably insufficient to satisfy the Government's obligations" where it "broadly identifie[d] the timeframe of the charges," "provide[d] limited location information," failed to "identify any particular institution" allegedly defrauded, and did not identify specific transactions at issue); *Rajaratnam*, 2010 WL 2788168, at *3 ("[C]ourts have sometimes ordered the

20

government to provide more particulars about overt acts alleged in terms too general to enable the defendant to defend against them.").

## CONCLUSION

The Government rushed to indict a man who faces the rest of his life in prison, relying on an investigation borrowed largely from conflicted bankruptcy professionals, and it has resisted every request to make good on the basic notice due process requires.  For the reasons set forth above, Mr. James respectfully requests that the Court order the Government to provide a bill of particulars identifying (1) the alleged co-conspirators, (2) the financial institutions allegedly affected or defrauded along with any other alleged victims and third parties, (3) the allegedly false or misleading statements and omissions, and (4) such other particulars as the Court deems appropriate.  Anything less would leave Mr. James to defend himself against an indictment that even the Government cannot describe with precision.

Respectfully submitted,

**QUINN EMANUEL URQUHART**
**& SULLIVAN, LLP**

Dated: July 18, 2026

By:    */s/ Scott Hartman*
Scott Hartman
William Burck
Sara Clark
295 Fifth Avenue, 9th Floor
New York, NY 10016
Tel.: (212) 849-7000
scotthartman@quinnemanuel.com
williamburck@quinnemanuel.com
saraclark@quinnemanuel.com

**CERTIFICATE OF SERVICE**

I hereby certify that on July 18, 2026, I caused a copy of the foregoing document to be served via ECF on all counsel of record.

/s/Scott Hartman<br>Scott Hartman