**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>PATRICK JAMES and EDWARD JAMES,<br><br>Defendants. | Case No.: 1:26-CR-29 (AT) |

**DEFENDANT EDWARD JAMES'S**
**MOTION TO SEVER**

BRACEWELL LLP
31 West 52nd Street
Suite 1900
New York, NY 10019
(212) 508-6100

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .......... 1

BACKGROUND .......... 2

I. Patrick Founds, Builds, and Controls First Brands and its Finances .......... 2

II. Patrick Directs the Schemes Alleged in the Indictment .......... 4

A. Patrick Directs the Falsification of First Brands' Financials .......... 4

B. Patrick Directs the Frauds on First Brands' Factors, Supply-Chain Financers, and Off-Sheet Lenders .......... 7

[redacted] [redacted] .......... 9

D. Patrick Undertook [redacted] .......... 10

E. The Indictment .......... 11

LEGAL STANDARD .......... 12

ARGUMENT .......... 14

I. Severance Is Warranted Because Patrick and Ed Will Advance Mutually Antagonistic Defenses .......... 14

II. Severance Is Warranted To Prevent the Prejudice of Double Prosecution .......... 15

III. Patrick's Manifest Culpability Will Substantially Prejudice Ed .......... 18

IV. A Joint Trial Will Not Be More Efficient .......... 20

CONCLUSION .......... 21

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Donnelly v. DeChristoforo*,
416 U.S. 637 (1974) ... 20

*United States v. Agnello*,
367 F. Supp. 444 (E.D.N.Y. 1973) ... 20

*United States v. Barret*,
824 F. Supp. 2d 419 (E.D.N.Y. 2011) ... 12

*United States v. Branker*,
395 F.2d 881 (2d Cir. 1968) ... 20

*United States v. Burke*,
No. 24-CR-00265 (TNM), Dkt. No. 53 (D.D.C. Sept. 25, 2024) ... 12, 13

*United States v. Cardascia*,
951 F.2d 474 (2d Cir. 1991) ... 12, 15

*United States v. DiNome*,
954 F.2d 839 (2d Cir. 1992) ... 20

*United States v. Gonzalez*,
804 F.2d 691 (11th Cir. 1986) ... 14

*United States v. Gray*,
292 F. Supp. 2d 71 (D.D.C. 2003) ... 19

*United States v. Nordlicht*,
No. 16-CR-00640 (BMC), 2018 WL 1796542 (E.D.N.Y. Apr. 16, 2018) ... 17, 18, 21

*United States v. Peter Andrew Brumbergs*,
No. 1:26-CR-25 (AT), Dkt. No. 13 (S.D.N.Y. Jan. 26, 2026) ... 3

*United States v. Rittweger*,
524 F.3d 171 (2d Cir. 2008) ... 12

*United States v. Romanello*,
726 F.2d 173 (5th Cir. 1984) ... 13

*United States v. Serpoosh*,
919 F.2d 835 (2d Cir. 1990) ... 14

*United States v. Shkreli*,
260 F. Supp. 3d 247 (E.D.N.Y. 2017) .......... 13, 15, 16

*United States v. Spinelli*,
352 F.3d 48 (2d Cir. 2003) .......... 13, 19

*United States v. Tarantino*,
846 F.2d 1384 (D.C. Cir. 1988) .......... 19

*United States v. Tootick*,
952 F.2d 1078 (9th Cir. 1991) .......... 13, 14

*United States v. Volpe*,
42 F. Supp. 2d 204 (E.D.N.Y. 1999) .......... 12

*United States v. Wilson*,
11 F.3d 346 (2d Cir. 1993) .......... 12

*Zafiro v. United States*,
506 U.S. 534 (1993) .......... 12, 18, 19

**Statutes**

18 U.S.C. § 225 .......... 11

18 U.S.C. § 1343 .......... 11

18 U.S.C. § 1344 .......... 11

18 U.S.C. § 1349 .......... 11

18 U.S.C. § 1956(h) .......... 11

**Rules**

Fed. R. Crim. P. 14(a) .......... 12

Federal Rule of Criminal Procedure 8(b) .......... 12

Federal Rule of Criminal Procedure 14 .......... 2, 14

## PRELIMINARY STATEMENT

The Indictment charges a sprawling fraud advanced by an "inner circle" of First Brands Group ("First Brands") executives through the company's falsification of financial statements and misuse of various financing arrangements, including asset-based lending, accounts receivable factoring, supply-chain finance, and special purpose vehicle lending. But the government's "inner circle" framing obscures a critical distinction: the lead defendant, First Brands' Founder and CEO Patrick James ("Patrick"), controlled First Brands, its finances, every one of its affiliated entities, and the allegedly fraudulent conduct itself, while his younger brother, co-defendant Edward James ("Ed"), played the exceedingly narrower role of sourcing working capital financing for the company. Indeed, the government's own disclosures and production demonstrate that Patrick masterminded and directly managed First Brands' fraud, employing senior finance executives Stephen Graham ("Graham") and Peter Andrew Brumbergs ("Brumbergs") to brazenly falsify and misrepresent the company's financials and pervert the legitimate financing structures that Patrick enlisted Ed to secure. Consumed by greed, Patrick controlled his company's financial affairs and the alleged criminal enterprise with an iron grip—one that he now seeks to turn against his own brother in a desperate bid to preserve his freedom and evade accountability for his actions.

Under these circumstances, a joint trial with Patrick would be fundamentally unfair not only to Ed, but also to Patrick. To defend himself, Ed will demonstrate how Patrick controlled, concealed, and benefited exorbitantly from the alleged misconduct, while Ed was kept deliberately in the dark. Patrick, in turn, will pursue the opposite theory by attempting to attribute knowledge and responsibility to Ed. These irreconcilable positions reflect precisely the type of mutual antagonism that warrants holding separate trials.

Moreover, Patrick's defense will undoubtedly rely heavily on mischaracterizing certain transactions entered into by Ed through his personal investment entities as not merely improper,

but as frauds perpetrated on Patrick himself, as the owner of First Brands. As a result, a joint trial poses the substantial risk of [redacted] Ed will be subject to double prosecution in more ways than one. Not only will he be forced to defend against two prosecutors—the Government and his co-defendant—but he will face two separate prosecution theories: one concerning the schemes alleged in the Indictment, and another for separate uncharged conduct allegedly perpetrated against Patrick, with all of the prejudice and risk of jury confusion that will entail.

For these reasons, Edward James respectfully requests that the Court order separate trials pursuant to Federal Rule of Criminal Procedure 14(a).

## BACKGROUND

### I. Patrick Founds, Builds, and Controls First Brands and its Finances

As set out in the Indictment, Patrick founded First Brands in 2013, serving as its Chief Executive Officer and directing the company's acquisition-driven growth strategy. *See* Indictment ¶¶ 5-7. It was "[u]nder the direction of PATRICK JAMES" that "First Brands' business required substantial cash to sustain its operations," and it was Patrick who "arranged for First Brands to acquire other businesses with borrowed money, accumulating significant debt and heavy recurring interest and repayment obligations." Indictment ¶ 7. Patrick also "wholly owned and controlled" the array of entities used in furtherance of the scheme alleged in the Indictment, including the "James Entities" that entered into financing arrangements with the "Off-Sheet Lenders" in connection with the off-balance-sheet debt scheme. *Id.* ¶¶ 22, 32. As the court-appointed Examiner in First Brands' bankruptcy case found, the evidence he reviewed, including scores of wire transfers to Patrick, is "consistent with the use of FBG and its affiliated non-debtor entities as vehicles for extracting cash for the benefit of Patrick James, rather than as profit-seeking operating businesses in the traditional sense." Ex. FF at 29.

Patrick was indisputably in charge, [redacted]

First Brands' finances—and its lenders and financers in particular—were Patrick's primary concern. [redacted]

[redacted]

---

[1] Exhibits cited herein are attached to the Declaration of Seth D. DuCharme, filed herewith. Any document submitted with this motion bearing the Bates prefix "SDNY_JAMES" or "USAO_SDNY" were produced to defendants by the government.

[2] Both Brumbergs and Graham have pleaded guilty to charges arising from their participation in the alleged schemes and are cooperating with the government. Brumbergs pleaded guilty to one count of conspiracy to commit wire fraud and bank fraud, four counts of wire fraud, two counts of bank fraud, and one count of conspiracy to commit money laundering. *See United States v. Peter Andrew Brumbergs*, No. 1:26-CR-25 (AT), Dkt. No. 13 (S.D.N.Y. Jan. 26, 2026). Graham pleaded guilty to one count of conspiracy to commit wire fraud and bank fraud, two counts of wire fraud, and one count of bank fraud. *See United States v. Stephen Graham*, No. 1:26-CR-25 (AT), Dkt. No. 28, (S.D.N.Y. Mar. 2, 2026).

[redacted]

More than just controlling, the evidence shows how Patrick was feared, even among the company's most senior executives. [redacted]

## II. Patrick Directs the Schemes Alleged in the Indictment

Just as Patrick controlled and directed First Brands, he "commandeered the enterprise to engage in fraudulent conduct to enrich himself and his family at the expense of First Brands and its creditors." Ex. HH ¶ 3.

### A. Patrick Directs the Falsification of First Brands' Financials

The Indictment alleges, among other schemes, a fraud on First Brands' lenders through the dissemination of false financials. As stated in the Indictment, "[a]t the direction and with the approval of PATRICK JAMES, First Brands employees made financial statement adjustments

untethered to business realities and instead designed to meet financial benchmarks set by PATRICK JAMES." Indictment ¶ 31. Specifically, [redacted]

Investigations by First Brands' bankruptcy advisors and the Examiner reached determinations with respect to Patrick's role that are consistent with allegations laid out in the Indictment. According to the Examiner, "[o]nce Patrick James communicated desired outcomes, Mr. Brumbergs implemented corresponding accounting changes." Ex. FF at 95; *see also id.* ("Witnesses further reported that Mr. Brumbergs operationalized [Patrick's] directives."). And First Brands has described in the bankruptcy how "[Patrick] James directed senior First Brands executives, including Brumbergs, to make these alterations." Ex. HH ¶ 68.

The documentary evidence produced by the Government supports this scheme. For example, [redacted]

[redacted]

[redacted]

[redacted]

[redacted]

### B. Patrick Directs the Frauds on First Brands' Factors, Supply-Chain Financers, and Off-Sheet Lenders

The Indictment's schemes regarding accounts receivable factoring, supply-chain finance, and off-balance-sheet inventory financing are likewise alleged to be undertaken at Patrick's direction. [redacted]

With respect to accounts receivable factoring, the Indictment sets out that "PATRICK JAMES … and his co-conspirators took steps to ensure that factoring firms did not learn of the company's fraudulent schemes, including by falsely representing that the invoices were bona fide accounts receivable, even when they were fictitious or overstated." Indictment ¶ 13. And "when First Brands' factoring counterparties raised questions about some of the company's invoices," it was "PATRICK JAMES" who "directed his co-conspirators to take steps to conceal their fraudulent conduct and to ensure that counterparties did not obtain information that might reveal the fraud." *Id.* First Brands has likewise concluded that the company's improper factoring practices were undertaken "under [Patrick] James' leadership and direction." Ex. HH ¶ 49. And as discussed above, Brumbergs made "very clear" when he explained the working of the scheme to First

Brands' restructuring professionals "that Mr. Patrick James was aware of all of these items." Ex. J at 120:6–9.

The alleged fraud on First Brands' supply-chain financers involved First Brands inducing financial institutions to advance funds against falsified invoices purporting to show amounts owed by First Brands to its suppliers. Indictment ¶ 9. These fabricated "cover invoices" were created not by Ed but by "[s]enior finance executives acting at the direction of [Patrick] James, through Brumbergs." Ex. HH ¶ 64. And again, it was "[Patrick] James, through Brumbergs" who "directed" that the funds these financers advanced be sent to a Patrick-owned customer collections entity "to conceal that the funds were simply returning to First Brands." *Id.* ¶ 65. "[Patrick] James" would further "determine how such funds were spent, and Brumbergs would direct the Finance department to distribute the funds accordingly." *Id.*

Finally, the alleged off-balance-sheet scheme involved the concealment of debt incurred through inventory financing. *See* Indictment ¶ 21. The Indictment alleges that certain "James Entities," "wholly owned and controlled by PATRICK JAMES," entered into financial arrangements "with at least three inventory financers," referred to as the "Off-Sheet Lenders." *Id.* ¶ 22. Patrick's culpability for the scheme is laid out in the Indictment, which alleges that "[t]he financing arrangements with the Off-Sheet Lenders were directed by PATRICK JAMES" and "concealed from the company's lenders" "[a]t the direction of PATRICK JAMES." *Id.* ¶¶ 21, 23. Patrick further "*personally* siphoned millions of dollars of Off-Sheet Lenders' funds into his *personal* accounts before the funds reached First Brands' corporate coffers." *Id.* ¶ 28 (emphasis added); [redacted]

- [redacted] [redacted]
- [redacted] [redacted]
- [redacted] [redacted]

[redacted] In all, the Examiner concluded that more than $220 million in funds received from Off-Sheet Lenders were diverted to Patrick. *See* Ex. FF at 27.

[redacted] [redacted]

[redacted] First Brands' own investigation of funds sent from First Brands to Patrick or entities under his control identified "more than 1,400 separate transfers totaling at least approximately $966 million from 2021 to 2025." Ex. GG ¶ 141.

[redacted] [redacted] [redacted]

[3] The quoted language comes [redacted]

[redacted]

**D. Patrick Undertook** [redacted]

[redacted]

[redacted]

[redacted]

[redacted] Reflecting his unawareness of Patrick's scheme, Ed communicated openly and often with First Brands' counterparties. [redacted]

**E. The Indictment**

On January 29, 2026, this Court unsealed a nine-count indictment against Patrick and Ed, charging each with (1) conspiracy to commit wire fraud affecting a financial institution and bank fraud, in violation of 18 U.S.C. § 1349 (Count Two); (2) wire fraud affecting a financial institution, in violation of 18 U.S.C. § 1343 (Counts Three, Four, Six, and Eight); (3) bank fraud, in violation of 18 U.S.C. § 1344 (Counts Five and Seven); and (4) conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h) (Count Nine).

Patrick—but not Ed—was additionally charged with organizing, managing, and supervising a continuing financial crimes enterprise, in violation of 18 U.S.C. § 225 (Count One).

**LEGAL STANDARD**

Fed. R. Crim. P. 8(b) permits joinder of two or more defendants in an indictment or information where the defendants are alleged to have participated in the same act or transaction, or series of acts or transactions, constituting one or multiple offenses. However, "[t]he court should sever defendants who are properly joined under Rule 8(b) when the prejudice against a defendant is so great that 'there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'" *United States v. Barret*, 824 F. Supp. 2d 419, 432 (E.D.N.Y. 2011) (quoting *United States v. Rittweger*, 524 F.3d 171, 179 (2d Cir. 2008)); *see also* Fed. R. Crim. P. 14(a) ("If the joinder of … defendants in an indictment … appears to prejudice a defendant[,] … the court may … sever the defendants' trials . . . ."). Whether this level of prejudice exists is "highly fact-specific" and "must be evaluated on a case-by-case basis." *Barret*, 824 F. Supp. 2d at 433 (citing *Zafiro v. United States*, 506 U.S. 534, 539 (1993)). The decision of whether to sever a trial rests within the sound discretion of the district court. *See Barret*, 824 F. Supp. 2d at 433 (citing *United States v. Wilson*, 11 F.3d 346, 353 (2d Cir. 1993)).

Severance is warranted where defenses are mutually antagonistic, such that "in order to accept the defense of one defendant, the jury must of necessity convict a second defendant." *United States v. Cardascia*, 951 F.2d 474, 484 (2d Cir. 1991). While the mere prospect of incompatible defenses does not prompt compulsory severance, severance is required where "the defenses [] conflict to the point of being so irreconcilable as to be mutually exclusive," thereby constituting prejudice that "denies defendants a fair trial." *Id.*; *see also United States v. Volpe*, 42 F. Supp. 2d 204, 210 (E.D.N.Y. 1999) (finding that "such [mutually antagonistic] defenses may violate a specific trial right of a defendant by compromising the opportunity to present an individual defense."); *United States v. Burke*, No. 24-CR-00265 (TNM), Dkt. No. 53 at 44:10-45:11 (D.D.C.

Sept. 25, 2024) (granting severance where co-defendants intended to "portray [defendant] as a liar" and would advance "mutually inconsistent and irreconcilable theories, with both sides [of] the defense pointing fingers at the other").

Such prejudice to a fair trial also exists where one defendant's counsel effectively assumes the role of a "second prosecutor" against a co-defendant. *See United States v. Shkreli*, 260 F. Supp. 3d 247, 256 (E.D.N.Y. 2017) (granting severance based on defense counsel's stated intention to "act as a second prosecutor" by arguing that his client was "just another victim of [his co-defendant's] fraud"). Courts have recognized that one co-defendant "attack[ing] the truth of [the other's] defense" and "aid[ing] the prosecution" imposes "the very prejudice that the severance rules are designed to rectify." *United States v. Romanello*, 726 F.2d 173, 181 (5th Cir. 1984); *United States v. Burke*, No. 24-00265 (TNM), Dkt. No. 53 at 44:10-45:11 (D.D.C. Sept. 25, 2024); *see also United States v. Tootick*, 952 F.2d 1078, 1082 (9th Cir. 1991) ("Defendants who accuse each other bring the effect of a second prosecutor into the case with respect to their codefendant" which is "particularly troublesome because the defense counsel are not always held to the limitations and standards imposed on the government prosecutor.").

Severance is also appropriate where a substantial disparity in the evidence against co-defendants creates a serious risk of spillover prejudice. Such prejudice may arise when the "sheer volume and magnitude of the evidence against one defendant so dwarfs the proof presented against his co-defendant" that a joint trial would impair the jury's ability to assess each defendant's guilt independently. *United States v. Spinelli*, 352 F.3d 48, 55 (2d Cir. 2003). Here, all of these factors tilt in favor of severance.

## ARGUMENT

### I. Severance Is Warranted Because Patrick and Ed Will Advance Mutually Antagonistic Defenses

Courts of appeal routinely recognize that mutually antagonistic defenses can create the very prejudice that Rule 14 is designed to prevent. *See United States v. Serpoosh*, 919 F.2d 835, 838 (2d Cir. 1990) (denial of severance caused "substantial prejudice" to defendants who offered "detailed and mutually exclusive explanations of their conduct on the day of the arrest."); *United States v. Gonzalez*, 804 F.2d 691, 695 (11th Cir. 1986) (rejection of severance "den[ied] [defendant] a fair trial" where co-defendant's counsel made antagonistic accusations and "in effect, told the jury that [defendant] was guilty."); *Tootick*, 952 F.2d at 1086 ("manifest prejudice" occurred where jury was "numbed by the conflicting defenses and [] ready to believe nobody.").

The defenses that Patrick and Ed are likely to advance at trial are not merely inconsistent; each necessarily depends on attributing knowledge, responsibility, and culpability to the other. [redacted]

Patrick, by contrast, [redacted] This is not mere finger pointing. Patrick's efforts to wash his hands of the alleged conduct by seeking to inculpate

Ed would mean that "the jury must of necessity convict a second defendant," i.e., Ed. *Cardascia*, 951 F.2d at 484. In other words, these mutually exclusive defenses carry a serious risk of prejudice to both defendants, as "in order to accept the defense of one defendant, the jury must of necessity convict [the other]." *Id.* This risk satisfies the standard for severance.

## II. Severance Is Warranted To Prevent the Prejudice of Double Prosecution

Severance is equally necessary because a joint trial would force both Ed and Patrick to defend not only against the government's case, but also against their co-defendant's effort to cast them as a wrongdoer.

*United States v. Shkreli* is persuasive. In *Shkreli*, defendants Shkreli and Greebel allegedly engaged in a three-part scheme to misappropriate millions in assets via material misrepresentations in order to repay investors. Shkreli planned to argue at trial that he lacked intent to defraud because he relied and acted upon the advice of counsel, including Greebel. Greebel would assert that his legal advice was predicated upon what he believed to be truthful and accurate information provided by Shkreli that was ultimately false. *See* 260 F. Supp. 3d at 254. Specifically, Greebel's counsel would mount a "defense that [would] be an 'echo chamber' for the prosecution by presenting evidence of multiple instances of Shkreli's purported lies, deceptions, and misrepresentations." *Id.* at 256. Greebel's counsel additionally declared his intention to present evidence of Shkreli's purported lies to Greebel, other attorneys, and investors. *Id.*

The Court found that, although defendants' trial defenses were not so antagonistic that belief in one defense necessitated disbelief in the other, "trying the defendants together would present a serious risk that Shkreli will not receive a constitutionally fair trial" because "[a] joint trial would place on Shkreli an unfair and heavy burden in defending himself against both the government and Greebel." *Id.* Consequently, such double prosecution created a "serious risk that

the jury would be prevented from making a reliable judgment about guilt or innocence even with limiting instructions by the court." *Id.*

The same unfair burden would arise here. [redacted]

[redacted]

[redacted]

[redacted]

*United States v. Nordlicht* is also instructive. In *Nordlicht*, defendants were accused of participating in two fraudulent schemes: concealing a growing liquidity crisis at a hedge fund and depriving third-party bondholders of asset sale proceeds through misrepresentations concerning bond ownership. *See United States v. Nordlicht*, No. 16-CR-00640 (BMC), 2018 WL 1796542, at *1 (E.D.N.Y. Apr. 16, 2018). Defendants voiced their intention to mount two incompatible defenses: Shulse, the company's former Chief Financial Officer and Chief Executive Officer, would argue that his co-defendants kept the fraud hidden from him and that he reported the misconduct upon becoming aware of it, while Nordlicht, the company's former Chief Investment Officer, and remaining defendants would assert that no fraud occurred. *See id.* The court ordered severance, finding that Shulse's strategy "would necessarily subject Nordlicht and the other defendants to 'double prosecution'" and "present[ed] a situation that [wa]s an order of magnitude more severe than routine accusations and blame-shifting between co-defendants" *Id.* at *2. Specifically, Shulse's counsel intimated that he may present the jury with a chain of emails during

closing argument that incriminated Shulse's co-defendants for the purpose of highlighting Shulse's absence from the communications. *See id.*

So too here. [redacted]

### III. Patrick's Manifest Culpability Will Substantially Prejudice Ed

A joint trial would undoubtedly expose Ed to substantial spillover prejudice from the overwhelming evidence of Patrick's nefarious conduct. [redacted]

Evidence of a co-defendant's misconduct may improperly influence the jury's assessment of another defendant's guilt. *See Zafiro v. United States*, 506 U.S. at 539. The Second Circuit has

recognized that severance may be required where the evidence against one defendant is so substantially more voluminous and consequential than the evidence against another that a joint trial would create an unacceptable risk of spillover prejudice. *See Spinelli*, 352 F.3d at 55. That concern is particularly acute here, as Patrick and Ed engaged in markedly different conduct. [redacted]

Consequently, a joint trial bears a significant risk that the volume of evidence against Patrick would be improperly imputed to Ed. *See Zafiro*, 506 U.S. at 539 (recognizing the risk of prejudice during a joint trial where defendants possess significantly different degrees of culpability). *See also United States v. Gray*, 292 F. Supp. 2d 71, 87 (D.D.C. 2003) ("[A] court should sever a joint trial where evidence against the one defendant would be 'far more damaging' than the evidence against the other.") (citing *United States v. Tarantino*, 846 F.2d 1384, 1398 (D.C. Cir. 1988)).

This spillover prejudice would be further magnified by the structure of the Indictment itself. Patrick is the only defendant charged in Count One (Continuing Financial Crimes Enterprise), and the Indictment repeatedly portrays Patrick as the sole individual who founded, controlled, owned, and directed First Brands and its affiliated entities. *See* Indictment ¶¶ 5-7, 22.

That asymmetry would invite precisely the type of guilt-by-association prejudice that warrants severance, because the jury would be asked to absorb extensive enterprise evidence directed overwhelmingly at Patrick while assessing Ed's far more limited role. *See United States v. DiNome*, 954 F.2d 839, 844-45 (2d Cir. 1992) (reversing defendants' fraud charges due to spillover prejudice from the "mass of irrelevant evidence" of co-defendants' RICO enterprise presented at trial); *United States v. Branker*, 395 F.2d 881, 887-88 (2d Cir. 1968) (finding prejudice to non-severed defendants who were "involved in only a small proportion of the evidence" where the jury was "subjected to weeks of trial dealing with dozens of incidents of criminal misconduct which d[id] not involve these defendants in any way.").

Nor would limiting instructions sufficiently cure this prejudice. Even carefully framed instructions cannot ensure that jurors will set aside the cumulative force of extensive, highly inculpatory evidence concerning Patrick's conduct. *See Donnelly v. DeChristoforo*, 416 U.S. 637, 644 (1974) (recognizing that some trial events may be so prejudicial that an instruction cannot realistically neutralize their effect). That concern is especially prevalent here, where Patrick and Ed are charged with complex financial fraud and money-laundering conspiracy allegations. In a multi-week trial likely to feature substantial testimony concerning conduct attributed solely to Patrick, there is a serious risk that the jury will be unable to segregate that evidence from the proof it must consider against Ed. The resulting prejudice would be both substantial and incurable. *See United States v. Agnello*, 367 F. Supp. 444, 447 (E.D.N.Y. 1973) (explaining that voluminous evidence and circumstantial proof may create prejudice where the jury cannot sort through the facts or assess each defendant independently). Accordingly, severance is warranted.

## IV. A Joint Trial Will Not Be More Efficient

Finally, the incompatibility of Ed's and Patrick's defenses is likely to complicate, not streamline, the trial. Each defendant's efforts to inculpate the other throughout each phase of trial

will result in multi-faceted objections that would necessitate lengthy sidebars or argument outside the presence of the jury. As the court recognized in *Nordlicht*:

> With Shulse included, the Court anticipates innumerable objections during openings and witness examinations and cross-examinations, along with frequent side bars. This risks adding to the complexity of an already challenging case, extending its length, and disrupting the parties' presentations, all of which will heighten the chances of jury confusion, further jeopardizing defendants' right to a fair trial.

*Nordlicht*, 2018 WL 1796542, at *3

Whatever marginal efficiency a joint trial might offer would be far outweighed by the delay, confusion, and prejudice the defendants' antagonism would inevitably produce.

**CONCLUSION**

For the reasons set forth above, Edward James respectfully requests that the Court grant his motion and sever his trial from the trial of Patrick James.

Dated: New York, New York
September 4, 2026

Respectfully submitted,

BRACEWELL LLP

By: /s/ Seth D. DuCharme
Seth D. DuCharme
Nicole Boeckmann
David A. Shargel
31 West 52nd Street, 19th Floor
New York, New York 10019
(212) 508-6100
seth.ducharme@bracewell.com
nicole.boeckmann@bracewell.com
david.shargel@bracewell.com