**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>PATRICK JAMES and EDWARD JAMES,<br><br>Defendants. | Case No.: 1:26-CR-29 (AT) |

**DEFENDANT EDWARD JAMES'S**
**MOTION TO DISMISS THE INDICTMENT**

BRACEWELL LLP
31 West 52nd Street
Suite 1900
New York, NY 10019
(212) 508-6100

**TABLE OF CONTENTS**


PRELIMINARY STATEMENT ..... 1

RELEVANT BACKGROUND ..... 2

I. First Brands and Its Financing Arrangements ..... 2

II. The Alleged Fraud ..... 4

III. The Charges ..... 5

ARGUMENT ..... 7

I. Counts Three, Four, and Eight Should Be Dismissed as Impermissibly Multiplicitous of Count Six ..... 7

A. Legal Standard ..... 7

B. Counts Three, Four, and Eight Are Multiplicitous of Count Six ..... 9

II. Counts Two, Six, and Seven Should Be Dismissed for Lack of Specificity ..... 12

A. Legal Standard ..... 12

B. The Indictment Fails to Plainly and Definitely Allege Counts Two, Six and Seven ..... 13

III. The Government Has Inadequately Alleged Venue ..... 16

CONCLUSION ..... 18

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Blockburger v. United States*,
284. U.S. 299 (1932) ..... 8

*Boyce Motor Lines, Inc. v. United States*,
342 U.S. 337 (1952) ..... 4

*Hamling v. United States*,
418 U.S. 87 (1974) ..... 13, 14

*United States v. Awan*,
459 F. Supp. 2d 167 (E.D.N.Y. 2006), *aff'd*, 384 F. App'x 9 (2d Cir. 2010) ..... 15

*United States v. Blumhagen*,
No. 09-CR-79 (HKS), 2016 WL 3563219 (W.D.N.Y. July 1, 2016) ..... 10, 11

*United States v. Chacko*,
169 F.3d 140 (2d Cir. 1999) ..... 7, 8

*United States v. Curtis*,
506 F.2d 985 (10th Cir. 1974) ..... 15

*United States v. De La Pava*,
268 F.3d 157 (2d Cir. 2001) ..... 12

*United States v. Dixon*,
509 U.S. 688 (1993) ..... 8

*United States. v. Fermin Castillo*,
829 F.2d 1194 (1st Cir. 1987) ..... 8

*United States v. Gruttadauria*,
439 F. Supp. 2d 240 (E.D.N.Y. 2006) ..... 12

*United States v. Heinze*,
361 F. Supp. 46 (D. Del. 1973) ..... 14

*United States v. Josten*,
704 F. Supp. 841, 844 (N.D. Ill. 1989) ..... 16

*United States v. Kelly*,
874 F.3d 1037 (9th Cir. 2017) ..... 11

*United States v. Kwok*,
No. 23-CR-118 (AT), 2024 WL 1407057 (S.D.N.Y. Apr. 2, 2024) ..... 11

*United States v. Maldonado–Rivera*,
922 F.2d 934 (2d Cir. 1990) ........................................ 7

*United States v. Murgio*,
209 F. Supp. 3d 698 (S.D.N.Y. 2016) ........................................ 17

*United States v. Nakashian*,
820 F.2d 549 (2d Cir. 1987) ........................................ 7

*United States v. Peterson*,
357 F. Supp. 2d 748 (S.D.N.Y. 2005) ........................................ 16, 17

*United States v. Rigas*,
281 F. Supp. 2d 660 (S.D.N.Y. 2003) ........................................ 8

*United States v. Strauss*,
285 F.2d 953 (5th Cir. 1960) ........................................ 14

*United States v. Stringer*,
730 F.3d 120 (2d Cir. 2013) ........................................ 13

*United States v. Wiehl*,
904 F. Supp. 81 (N.D.N.Y. 1995) ........................................ 8

*United States v. Wilson*,
No. 01-CR-53 (DLC), 2001 WL 798018 (S.D.N.Y. July 13, 2001) ........................................ 17

**Statutes**

18 U.S.C. § 225 ........................................ 2, 3, 4

18 U.S.C. § 1343 ........................................ 2

18 U.S.C. § 1344 ........................................ 2

18 U.S.C. § 1349 ........................................ 2

18 U.S.C. § 1956 ........................................ 2

**Rules**

Fed. R. Crim. P. 7 ........................................ 1, 12, 13, 14

Fed. R. Crim. P. 12 ........................................ 12

Fed. R. Crim. P. 18 ........................................ 16

**Constitutional Provisions**

U.S. Const. Amendment V ........ 7

U.S. Const. Amendment VI ........ 16

U.S. Const. Article III ........ 16

**PRELIMINARY STATEMENT**

The Indictment charges Edward James ("Mr. James") with wire fraud, bank fraud, and related conspiracy offenses arising from First Brands' complex financing arrangements. But the charging instrument fails to meet the requirements of a criminal pleading for at least three reasons, each of which independently warrants dismissal or, at a minimum, an order directing the government to provide a bill of particulars.

First, Counts Three, Four, and Eight are impermissibly multiplicitous of Count Six. Each of those counts charges wire fraud, yet none alleges an offense distinct from Count Six. Instead, Counts Three, Four, and Eight simply carve narrower subsets of the same alleged "lenders" and rest on the same alleged misrepresentations about First Brands' "financial condition" that Count Six already encompasses. Charging the same conduct multiple times in separate counts violates the Double Jeopardy Clause and creates the misleading impression of greater criminal activity than actually alleged.

Second, Counts Two, Six, and Seven fail to provide the plain and definite statement of essential facts required by Fed. R. Crim. P. 7(c). Rather than identify which counterparties, financial arrangements, or misrepresentations correspond to each charge, these counts rely on broad, undefined categories—"lenders," "financers," "financial condition," "collateral"—that shift in meaning across the Indictment and leave Mr. James unable to discern the government's theory of liability and prepare a focused defense.

Third, the Indictment's venue allegations are constitutionally inadequate. Although the government chose this district as its forum, the Indictment offers nothing beyond the boilerplate recitation that the charged conduct occurred "in the Southern District of New York and elsewhere."

Mr. James is a decades-long Ohio resident, First Brands was based in Cleveland with no New York presence, and the government has refused even to identify examples of evidence supporting venue when asked.

For these reasons, which are set forth more fully below, this motion should be granted.

## RELEVANT BACKGROUND

On January 29, 2026, this Court unsealed a nine-count indictment against Patrick James and Mr. James, charging each defendant with (1) conspiracy to commit wire fraud affecting a financial institution and bank fraud, in violation of 18 U.S.C. § 1349 (Count Two); (2) wire fraud affecting a financial institution, in violation of 18 U.S.C. § 1343 (Counts Three, Four, Six, and Eight); (3) bank fraud, in violation of 18 U.S.C. § 1344 (Counts Five and Seven); and (4) conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h) (Count Nine). Patrick James was additionally charged with organizing, managing, and supervising a continuing financial crimes enterprise, in violation of 18 U.S.C. § 225 (Count One).

As set out in the Indictment, Mr. James is a former executive of First Brands, which was a leading global supplier of aftermarket automotive parts, including brakes, filters, wipers, lights, and other products. *See* Indictment ¶¶ 4-6. Founded in 2013, First Brands served large automotive retailers, wholesale part distributors, and the world's largest commercial retailers, ultimately generating billions in annual sales until filing for Chapter 11 bankruptcy protection in September 2025. *See id*. ¶¶ 3-4.

### I. First Brands and Its Financing Arrangements

According to the Indictment, First Brands utilized a variety of commercial financing arrangements, including accounts-receivable factoring (also called "receivables factoring"),

supply-chain financing, asset-based lending secured by inventory and other assets, and inventory-financing programs involving entities owned by Patrick James. *See id.* ¶¶ 8-10, 21-22.

Receivables factoring is a common financial arrangement by which a business converts its outstanding invoices to its customers into immediate cash by selling or assigning those receivables to a bank or finance company, typically for less than face value. *See id.* ¶ 8. The financier then receives payment when the invoices are paid. *See id.* The Indictment refers to the third parties that provided such financing to First Brands interchangeably as, among other things, "factors," "factoring partners," and "lenders." *Id.* ¶¶ 8, 12, 13. First Brands used two forms of factoring: customer-linked factoring and third-party factoring. *See id.* ¶ 8. Under customer-linked arrangements, once a customer verified and approved a First Brands invoice, a customer-affiliated bank or finance company paid First Brands, and the customer later paid that financier directly. *See id.* Under third-party arrangements, First Brands sold invoices to finance companies with no customer affiliation; those companies advanced funds after invoicing, while First Brands remained responsible for collecting customer payments and passing the full invoice amounts on to the factor. *See id.*

First Brands also used accounts-payable factoring, or supply-chain financing, to fund payments to suppliers. *See id.* ¶ 9. Through these arrangements, financial institutions advanced money against invoices issued to First Brands by its suppliers, with First Brands obligated to repay the financier later. *See id.* The Indictment variously refers to these financial institutions as "financers," "lenders," "accounts payable factoring partners," "supply-chain financers," and "factor[s]." *Id.* ¶¶ 9, 16, 17, 19-20. Each supply-chain finance facility had a borrowing limit or "capacity," which helped First Brands defer supplier payments and improve near-term liquidity. *See id.* ¶ 9.

In addition to receivables factoring and supply-chain finance, First Brands utilized asset-based lending to fund various operations and acquisitions by borrowing funds that were secured by inventory, equipment, and other physical assets. *See id.* ¶ 10. First Brands' borrowing capacity was related to the reported value of that collateral, and the company routinely provided lenders with information about those assets and their value. *See id.*

First Brands also obtained liquidity through inventory-financing programs involving entities owned by Patrick James, referred to in the Indictment as the "James Entities." *See id.* ¶¶ 21–22. According to the Indictment, those arrangements involved the sale of First Brands' inventory to the James Entities to be pledged as collateral to inventory financers, also referred to in the Indictment as "lenders." *See id.* ¶¶ 22, 28.

## II. The Alleged Fraud

The Indictment alleges that, from approximately 2018 through 2025, Mr. James, Patrick James, and their unnamed co-conspirators participated in various schemes designed to defraud First Brands' "lenders" and "financing partners" involving receivables financing, supply-chain financing, off-balance-sheet debt, and false statements regarding First Brands' financial condition. *See id.* ¶¶ 1-2.[1]

First, the Indictment claims that First Brands, at the direction of Patrick James and Mr. James, obtained financing through receivables factoring programs by selling invoices that were fictitious, inflated, or pledged to multiple counterparties. *See id.* ¶ 12.

---

[1] Mr. James does not concede any of the Indictment's factual allegations and intends to prove at trial that they are incorrect. Nevertheless, because, as a legal matter, the Court must presume the truth of the Indictment's allegations on a motion to dismiss, *Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337, 343 n.16 (1952), the facts described above are taken from the Indictment.

Second, the Indictment asserts that First Brands, at the direction of Patrick James and Mr. James, used supply-chain financing programs to obtain liquidity by submitting "false and misleading information about First Brands' financial position" and "false invoice information" and "funding requests" to unidentified "financing partners." *See id.* ¶¶ 16–17. Some financed amounts were allegedly routed back to First Brands rather than being used to pay suppliers. *See id.* ¶ 16.

Third, the Indictment alleges that the inventory-financing arrangements with the James Entities were concealed from First Brands' "senior lenders" and involved First Brands providing inaccurate information regarding collateral to the "inventory financers." *Id.* ¶¶ 21–22, 24–25. In addition, funds provided by the inventory financers were allegedly routed through multiple entities and accounts before reaching First Brands, with repayments processed through similarly indirect channels. *See id.* ¶¶ 26–27.

Finally, the Indictment alleges a scheme concerning First Brands "disseminating materially false and misleading financial information about the company and secretly encumbering assets subject to the lenders' borrowing base and priority liens." *Id.* ¶ 30. This scheme encompassed First Brands providing its "asset-backed lenders" with inaccurate financial statements and false and misleading information regarding the collateral allegedly securing their loans. *Id.* ¶¶ 31, 33.

## III. The Charges

The Indictment's generic and inconsistent factual allegations carry through to the charging counts. The Indictment charges Mr. James with one count of conspiracy to commit wire fraud affecting a financial institution and bank fraud (Count Two), four counts of wire fraud affecting a financial institution (Counts Three, Four, Six, and Eight), two counts of bank fraud (Counts Five and Seven), and one count of conspiracy to commit money laundering (Count Nine). *See id.* ¶¶ 38–56.

The four wire fraud counts (Counts Three, Four, Six, and Eight) charge Mr. James with overlapping schemes involving the same course of conduct, as shown in the chart below:

| | **Count Six** | **Count Three** | **Count Four** | **Count Eight** |
|---|---|---|---|---|
| **Statute** | 18 U.S.C. §§ 1343 & 2 | 18 U.S.C. §§ 1343 & 2 | 18 U.S.C. §§ 1343 & 2 | 18 U.S.C. §§ 1343 & 2 |
| **Period** | 2020-2025 | 2020-2025 | 2020-2025 | 2020-2025 |
| **Defendants** | Both | Both | Both | Both |
| **Paragraphs incorporated** | ¶¶ 1-36 | ¶¶ 1-36 | ¶¶ 1-36 | ¶¶ 1-36 |
| **Misrepresentations regarding** | First Brands' "financial condition" | First Brands' "accounts receivable," i.e., its financial condition | First Brands' "accounts payable" and "financial condition" | First Brands' "financial condition" and "collateral and property" |
| **Alleged victim** | "First Brands' lenders" (¶ 49) | Characterized earlier as a "lender" (¶ 12) | Characterized earlier as a "lender" (¶ 16) | Defined earlier as "lenders" |

Count Three alleges "a scheme and artifice to defraud and to obtain money from First Brands' factors through fraudulent representations and promises regarding the nature, value, and existence of First Brands' accounts receivable[]" *id.* at ¶ 43; Count Four alleges "a scheme and artifice to defraud and to obtain money from First Brands' supply chain financers through fraudulent representations and promises regarding the nature, value, and existence of First Brands' accounts payable and First Brands' financial condition[]" *id.* at ¶ 45; Count Six alleges more broadly "a scheme and artifice to defraud and to obtain money from First Brands' lenders through fraudulent representations and promises regarding First Brands' financial condition[]" *id.* at ¶ 49; and Count Eight alleges "a scheme and artifice to defraud and to obtain money from First Brands' off-sheet lenders through fraudulent representations and promises regarding First Brands' financial condition and the nature, value, and existence of collateral and property that were the subject of financing agreements." *id.* at ¶ 53.

The two bank fraud counts (Counts Five and Seven) rely on expansive and ill-defined categories of alleged victims and financial representations. Count Five alleges "a scheme and artifice to defraud financial institutions that provided supply chain financing to First Brands through fraudulent representations and promises regarding the nature, value, and existence of First Brands' accounts payable and First Brands' financial condition[,]" *id.* at ¶ 47, and Count Seven alleges "a scheme and artifice to defraud financial institutions that provided asset-backed financing to First Brands through fraudulent representations and promises regarding First Brands' financial condition," *id.* at ¶ 51.

## ARGUMENT

### I. Counts Three, Four, and Eight Should Be Dismissed as Impermissibly Multiplicitous of Count Six

Counts Three, Four, and Eight, charging wire fraud, should be dismissed because they do not charge offenses distinct from Count Six, also charging wire fraud. Instead, each count targets a narrower subset of the same alleged lenders and the same alleged misrepresentations concerning First Brands' financial condition that are charged in Count Six. Because those counts merely divide a single alleged scheme into multiple overlapping charges, they are impermissibly multiplicitous and cannot stand as separate offenses.

#### A. Legal Standard

An indictment is multiplicitous "when it charges a single offense as an offense multiple times, in separate counts, when, in law and fact, only one crime has been committed." *United States v. Chacko*, 169 F.3d 140, 145 (2d Cir. 1999); *see also United States v. Nakashian*, 820 F.2d 549, 552 (2d Cir. 1987). The Double Jeopardy Clause of the U.S. Constitution prohibits multiplicitous indictments or counts, which "assur[es] that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense." *United States v.*

*Maldonado–Rivera*, 922 F.2d 934, 969 (2d Cir. 1990). "In addition to the double jeopardy problem, the evil in charging a single offense in more than one count is that it may create the impression of more criminal activity on the part of the defendants than in fact may have occurred." *United States v. Wiehl,* 904 F. Supp. 81, 84 (N.D.N.Y. 1995).

"It is not determinative whether the same conduct underlies the counts; rather, it is critical whether the 'offense'—in the legal sense, as defined by Congress—complained of in one count is the same as that charged in another." *Chacko*, 169 F.3d at 146. To make this decision, the Second Circuit relies on the test articulated by *Blockburger v. United States*, 284. U.S. 299 (1932), which asks whether "[e]ach of the offenses created requires proof of a different element," and whether "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Id*. at 304; *see also United States v. Dixon*, 509 U.S. 688 (1993) (affirming applicability of *Blockburger* test). "When conduct is alleged to have violated the same statute multiple times, as in the present case, the relevant question—one of statutory interpretation—is identification of the 'unit of prosecution' established by the statute." *United States v. Rigas*, 281 F. Supp. 2d 660, 666 (S.D.N.Y. 2003) (citation modified).

Such statutory interpretation is not necessary here. While it is true that each use of the wires under the wire fraud statute could "constitute[] a separate, independent, freestanding crime," *U.S. v. Fermin Castillo*, 829 F.2d 1194, 1199 (1st Cir. 1987), the government has charged Mr. James in Count Six with the *same* conduct, relying on the *same* units of prosecution, charged by Counts Three, Four, and Eight. Thus, as set forth below, Counts Three, Four, and Eight must be dismissed.

### B. Counts Three, Four, and Eight Are Multiplicitous of Count Six

Count Six is framed broadly, alleging that Mr. James devised a scheme to defraud First Brands' "lenders" and obtain money from them through fraudulent representations concerning "First Brands' financial condition." *See* Indictment ¶ 49. Counts Three, Four, and Eight do not charge distinct offenses. Rather, on their face, Counts Three, Four, and Eight simply carve out narrower subsets of the same alleged "lenders" and advance the same fraud theory as charged in Count Six—that First Brands misrepresented its "financial condition." Because these counts charge the same offenses as Count Six, they must be dismissed as impermissibly multiplicitous.

Count Three is illustrative. It alleges that Mr. James devised a scheme to defraud and to obtain money from First Brands' "factors" through fraudulent representations regarding "the nature, value, and existence of First Brands' accounts receivable." *Id.* ¶ 43. The Indictment itself treats First Brands' "factors" as a subset of First Brands' "lenders," alleging that "First Brands factored billions of dollars' worth of customer invoices through arrangements with *lenders*." *Id.* ¶ 12 (emphasis added). Nor does Count Three identify a distinct misrepresentation. The "nature, value, and existence of First Brands' accounts receivable" is necessarily part of First Brands' broader "financial condition," which is the very subject of Count Six, and thus Count Three relies upon the same units of prosecution as Count Six. *Id.* ¶ 43.

Count Four suffers from the same defect. It alleges that Mr. James devised a scheme to defraud and obtain money from First Brands' "supply chain financers" through fraudulent representations regarding "the nature, value, and existence of First Brands' accounts payable and First Brands' financial condition." *Id.* ¶ 45. First Brands' "supply chain financers" are, like the factors, described in the Indictment as First Brands' "lenders," and therefore fall within the category of alleged victims already encompassed by Count Six. *See id.* ¶ 16 (describing the

purported accounts payable scheme and alleging that "[t]hose false representations were material to the *lenders*.") (emphasis added). Count Four also rests expressly on alleged misstatements concerning "First Brands' financial condition," the same subject of Count Six. *Id.* ¶ 45. And the "nature, value, and existence of First Brands' accounts payable" is likewise part of First Brands' broader financial condition. *Id.*

Count Eight is no different. It alleges that Mr. James devised a scheme to defraud First Brands' "off-sheet lenders" and obtain money from them through fraudulent representations concerning "First Brands' financial condition" and "the nature, value, and existence of collateral and property that were the subject of financing agreements." *Id.* ¶ 53. But "off-sheet lenders" are, by the Indictments' own definition, "lenders" (*see id.* ¶ 22) and thus fall squarely within the same alleged victim category that is charged in Count Six. *Id.* ¶ 53. Count Eight also rests on the same alleged misstatements concerning "First Brands' financial condition." *Id.* And "the nature, value, and existence of collateral and property that were the subject of financing agreements" is necessarily part of the same broader "financial condition" theory charged in Count Six. *Id.*

Moreover, the government cannot sidestep the multiplicitous issue here by pointing to the fact that, under the wire fraud statute, each use of the wires might constitute a separate offense of wire fraud. Such an argument would miss the point. While courts have denied motions to dismiss indictments on multiplicitous grounds where multiple wire fraud counts are alleged, those cases involve circumstances where "distinct acts of wire fraud" were charged, and "[a]lthough each was allegedly committed as part of the charged scheme to defraud, these offenses [were] not the same in fact and law." *United States v. Blumhagen*, No. 09-CR-79 (HKS), 2016 WL 3563219, at *5 (W.D.N.Y. July 1, 2016).

Here, unlike in cases like *Blumhagen*, Counts Three, Four, and Eight state the exact same "fact and law" alleged in Count Six. Counts Three, Four, and Eight rely on the same "units of prosecution" as Count Six: making false statements via use of the wires to First Brands' lenders regarding the company's financial condition. In its August 31, 2026 opposition to defendants' motions for a bill of particulars, the government avers that Count Six "arise[s] from the defendants providing false financial information to FBG's lenders," Dkt. No. 103 at 7, which also includes the lenders alleged to have been misled in Counts Three, Four, and Eight.

While the government may claim that Count Six is aimed at the same conduct as Count Seven (bank fraud), as it does in its bill of particulars opposition, those counts are markedly different. As stated in the Indictment and discussed above, Count Six describes a scheme to "defraud and to obtain money from First Brands' lenders through fraudulent representations and promises regarding First Brands' financial condition," Indictment ¶ 49, while Count Seven speaks more specifically to a scheme "to defraud *financial institutions that provided asset-backed financing* to First Brands through fraudulent representations and promises regarding First Brands' financial condition," *id*. ¶ 51 (emphasis added). Had the government intended to make Count Six directed to First Brands' "asset-backed" lenders, the Indictment could have said so but does not. Regardless, the breadth of Count Six cannot be cured by *ex post facto* statements made by the government in its filings. The indictment must be sufficient on its face. And on its face, this indictment alleges a scheme which duplicates the other wire fraud schemes charged. *See United States v. Kwok*, No. 23-CR-118 (AT), 2024 WL 1407057, at *8 (S.D.N.Y. Apr. 2, 2024) ("The Court … will not evaluate documents and evidence outside of the four corners of the [i]ndictment…") (internal quotation marks omitted); *United States v. Kelly*, 874 F.3d 1037, 1047 (9th Cir. 2017) ("In determining whether an indictment charges a cognizable offense, we are bound

by the four corners of the indictment, must accept the truth of the allegations in the indictment, and cannot consider evidence that does not appear on the face of the indictment.”).

Simply put, each of Counts Three, Four and Eight allege a wire fraud scheme targeting First Brands’ lenders based on misrepresentations about First Brands’ financial condition. That is the same offense that is charged in Count Six, and thus Counts Three, Four, and Eight should be dismissed as improperly multiplicitous.

## II. Counts Two, Six, and Seven Should Be Dismissed for Lack of Specificity

Counts Two, Six, and Seven should be dismissed because they do not provide Mr. James fair notice of the charges he must defend against. Each count relies on broad, undefined categories of alleged victims and financial information—such as “lenders,” “financers,” “providers of asset-backed financing,” “collateral,” and “financial condition”—without explaining which counterparties, property, or alleged misrepresentations correspond to each charge. This lack of specificity prevents Mr. James from discerning the charged theory of liability underlying each count and impairs his ability to prepare a defense and protect against future prosecution for the same alleged conduct.

### A. Legal Standard

An indictment’s sufficiency is a core safeguard of a criminal defendant’s right to understand the charges, prepare a defense, and avoid being prosecuted twice for the same alleged conduct. *See United States v. Gruttadauria*, 439 F. Supp. 2d 240, 245 (E.D.N.Y. 2006). Fed. R. Crim. P. 7(c)(1)—Fed. R. Crim. P. 12(b)(3)(B)(iii)’s companion pleading rule—requires the government to do more than merely recite statutory language. The indictment must contain “a plain, concise, and definite written statement of the essential facts constituting the offense charged.” *See United States v. De La Pava*, 268 F.3d 157, 162 (2d Cir. 2001) (quoting Fed. R.

Crim. P. 7(c)(1)). An indictment is sufficient only if it both sets forth the elements of the offense and "fairly informs a defendant of the charge against which he must defend," while also enabling him to plead an acquittal or conviction as a bar to future prosecution for the same offense. *United States v. Stringer*, 730 F.3d 120, 124 (2d Cir. 2013) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)).

### B. The Indictment Fails to Plainly and Definitely Allege Counts Two, Six and Seven

Count Two should be dismissed because it fails to specify the object and scope of the alleged conspiracy with the clarity that Rule 7 requires. As to the wire fraud object, rather than providing a plain and definite statement, Count Two refers ambiguously to a fraud on First Brands' "lenders and financers," without any indication of whether those terms include accounts-receivable factors, supply-chain financers, off-sheet lenders, or some other financing counterparties referenced elsewhere in the Indictment. Indictment ¶ 40 (alleging that the defendants "agreed to make and cause to be made false and misleading statements to First Brands' lenders and financers …"). Despite a lengthy speaking portion of the Indictment—and despite occasionally defining certain terms, *see, e.g.*, ¶ 22 (defining "Off-Sheet Lenders" as three particular inventory financers)—nowhere does the Indictment define "lenders" or "financers" as used in Count Two. That lack of clarity matters because the Indictment describes multiple fraud schemes, multiple financing arrangements, multiple categories of counterparties, and multiple alleged misrepresentations, and it is not apparent which "lenders" or "financers" are the subject of Count Two. As a result, Mr. James is left to guess which alleged financing relationships form the basis of the wire fraud conspiracy charged against him.

Count Two is equally deficient as to the bank fraud object. The count refers to "collateral that First Brands pledged or sold," but it does not say what property that phrase is intended to

capture. Indictment ¶ 41 (alleging that the defendants "agreed to make and cause to be made false and misleading statements to financial institutions regarding its financial condition and the existence, nature, and value of collateral that First Brands pledged to its lenders and financers."). It is unclear whether the alleged collateral refers to receivables sold to factors, inventory pledged or sold to inventory financers, collateral pledged in connection with supply-chain financing, collateral securing asset-backed loans, or some other property altogether. The statutory allegation as to the bank fraud object also suffers from the same defect as the wire fraud object—alleging a fraud involving "lenders" and "financers" with no notice to Mr. James of which lenders or financers are the subject of the allegation. Without that basic information, Count Two does not provide a definite statement of the essential facts constituting the alleged conspiracy or permit Mr. James to determine what conduct the government contends was criminal.

By relying on vague, ambiguous allegations without supplying the factual detail necessary to define the charged conspiracies, Count Two reflects the same pleading defect courts have deemed insufficient for failure to provide a plain and definite statement. *See United States v. Strauss*, 285 F.2d 953, 955 (5th Cir. 1960) (affirming dismissal of "extremely verbose indictment" charging fraudulent transfer where it was "impossible to discover" a "plain, concise and definite written statement of the essential facts constituting the offense charged"); *United States v. Heinze*, 361 F. Supp. 46, 56 (D. Del. 1973) (dismissing conspiracy counts that were "so vague, indefinite and unclear as to be fatally defective under Rule 7(c)"); *see also Hamling*, 418 U.S. at 117 (explaining that an indictment must "fully, directly, and expressly, *without any uncertainty or ambiguity*, set forth all the elements necessary to constitute the offence intended to be punished") (emphasis added).

Counts Six and Seven should be dismissed for the same reason. Count Six alleges a scheme to defraud First Brands' "lenders" through representations concerning "First Brands' financial condition," but it does not say which of the various categories of lenders referred to in the Indictment were allegedly targeted or explain how that broad financial condition theory differs from the more specific alleged misrepresentations concerning collateral, accounts receivable, and accounts payable charged elsewhere in the Indictment. *Id.* ¶ 49. The result is a count that sweeps across the Indictment's various financing theories without stating clearly and in a definite manner the alleged victims, statements, or financial information that comprise the charged offense. Courts have rejected precisely this form of indefinite pleading. *See United States v. Awan*, 459 F. Supp. 2d 167, 175 (E.D.N.Y. 2006), *aff'd*, 384 F. App'x 9 (2d Cir. 2010) (dismissing count where indictment used "the generic expression 'material support[]' . . . without specifying which of a variety of activities, any one of which would be criminal, that the defendant must defend against or which the grand jury considered"); *United States v. Curtis*, 506 F.2d 985, 992 (10th Cir. 1974) (dismissing fraud indictment where it "plead[ed] little more than the statutory language without any fair indication of the nature or character of the scheme or artifice relied upon, or the false pretenses, misrepresentations or promises forming a part of it").

Count Seven likewise fails to provide adequate specificity. It alleges fraud against "financial institutions that provided asset-backed financing," but does not identify who those providers are or clarify whether that phrase refers to asset-based lenders, off-sheet lenders, factors, supply-chain financers, or some combination of those counterparties referred to elsewhere in the Indictment. Indictment ¶ 51. Nor does Count Seven plainly state whether alleged misrepresentations concerning First Brands' "financial condition" are distinct from the alleged misrepresentations concerning collateral, accounts receivable, and accounts payable that appear

throughout the Indictment. *Id.* This omission mirrors the defect in *United States v. Josten*, where the court dismissed wire and mail fraud charges because the indictment failed to "state the allegedly false representations," "name the victims of the allegedly improper conduct or the accounts to which it pertained," or "give any specific dates upon which the challenged activity took place." 704 F. Supp. 841, 844 (N.D. Ill. 1989). By relying on undefined victim categories and overlapping descriptions of financial information, Counts Six and Seven fail to provide the plain and definite statement necessary for Mr. James to understand the charges, prepare his defense, and protect against a later prosecution based on the same alleged conduct.

**III. The Government Has Inadequately Alleged Venue**

The Indictment should be dismissed because it contains no information establishing venue in the Southern District of New York and merely states repeatedly that the alleged conduct occurred "in the Southern District of New York and elsewhere." *See*, *e.g.*, Indictment ¶¶ 39, 43. This is not enough.

Rule 18 of the Federal Rules of Criminal Procedure provides that "the government must prosecute an offense in a district where the offense was committed." Fed. R. Crim. P. 18. This requirement is based upon two Constitutional provisions. Article III provides that criminal trials "shall be held in the state where the said crimes shall have been committed," U.S. Const. Art. III, § 2, cl. 3, while the Sixth Amendment requires that "the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed." U.S. Const. amend. VI; *see also United States v. Peterson*, 357 F. Supp. 2d 748, 751 (S.D.N.Y. 2005). It is the government's burden to prove that venue exists, and where, as here, more than one count is charged, it must do so as to each. *Id*.

Although "courts apply a more liberal standard when assessing whether an indictment's venue allegations survive a pre-trial motion to dismiss," *United States v. Murgio*, 209 F. Supp. 3d 698, 721 (S.D.N.Y. 2016), this case warrants close examination. Mr. James is a decades-long resident of Ohio, and First Brands was located in Cleveland without any presence in New York. The Indictment's allegations, beyond the venue boilerplate, do not include anything that would allow the Court to determine where any of the charged conduct occurred, let alone that it took place within the District. There are no allegations of victims located here, overt acts that took place here, emails sent here, or any banking activity here. *C.f. Peterson*, 357 F. Supp. 2d at 752 (denying pre-trial motion to dismiss for lack of venue but noting that the indictment "contains more than just the conclusory allegations of the existence of venue; it also contains allegations of specific acts occurring in the Southern District of New York").

Compounding this, when counsel for Mr. James wrote to the government asking it to simply identify examples within the voluminous discovery of documents or materials that would provide a basis for venue in this District, the government flatly refused, informing Mr. James that he "is not entitled to a preview of the Government's trial proof and we decline to provide one."

The Indictment's utter lack of information suggesting that venue is proper, combined with the government's refusal to substantiate it even by example, warrants dismissal. At the very least, the government should be required to provide Mr. James a bill of particulars supporting its venue allegations. *See*, *e.g.*, *United States v. Wilson*, No. 01-CR-53 (DLC), 2001 WL 798018, at *6 (S.D.N.Y. July 13, 2001) (denying motion to dismiss for lack of venue without prejudice but ordering the government to provide "a bill of particulars describing facts it intends to establish at trial which it claims are sufficient to establish venue").

## CONCLUSION

For the reasons set forth above, Mr. James respectfully requests that the Court grant Mr. James's motion to dismiss the indictment.

Dated: New York, New York
September 4, 2026

Respectfully submitted,

BRACEWELL LLP

By: /s/ Seth D. DuCharme

Seth D. DuCharme
Nicole Boeckmann
David A. Shargel
31 West 52nd Street, 19th Floor
New York, New York 10019
(212) 508-6100
seth.ducharme@bracewell.com
nicole.boeckmann@bracewell.com
david.shargel@bracewell.com