**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>PATRICK JAMES and EDWARD JAMES,<br><br>Defendants. | Case No.: 1:26-CR-29 (AT) |

**DEFENDANT EDWARD JAMES'S MOTION TO SUPPRESS EVIDENCE OBTAINED PURSUANT TO SEARCH WARRANTS**

BRACEWELL LLP
31 West 52nd Street
Suite 1900
New York, New York 10019
(212) 508-6100

## TABLE OF CONTENTS


PRELIMINARY STATEMENT ........................................ 1

LEGAL STANDARD ........................................ 2

I. Fourth Amendment Requirements for Search Warrants ........................................ 2

A. Probable Cause ........................................ 3

B. Particularity ........................................ 5

C. Execution Within a Reasonable Period of Time ........................................ 6

ARGUMENT ........................................ 7

I. The Court Should Suppress the Microsoft Warrant Returns Because the Government's Search and Seizure of Mr. James's Email Account Violate the Fourth Amendment ........................................ 7

A. Relevant Background ........................................ 7

B. The Microsoft Warrant is Overbroad ........................................ 8

C. The Microsoft Warrant Lacks Particularity. ........................................ 10

D. The Government Failed to Execute the Microsoft Warrant Within a Reasonable Time ........................................ 12

II. The Court Should Suppress the Apple Warrant Returns Because the Government's Search and Seizure of Mr. James's iCloud Account Violated the Fourth Amendment ........................................ 16

A. Relevant Background ........................................ 16

B. The Apple Affidavit Does Not Establish Probable Cause to Seize the Entirety of Mr. James's iCloud Account ........................................ 17

C. The Apple Warrant Lacks Particularity ........................................ 19

D. The Government Failed to Execute the Apple Warrant Within a Reasonable Time ........................................ 20

III. There Could Be No Objectively Reasonable Reliance on the Facially Deficient Warrants ........................................ 20

CONCLUSION ........................................ 22

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*650 Fifth Ave. v. Alavi Found.*,
830 F.3d 66 (2d Cir. 2016)....................5, 18

*Ganek v. Leibowitz*,
874 F.3d 73 (2d Cir. 2017)....................3

*Illnois v. Gates*,
462 U.S. 213 (1983)....................5

*Maryland v. Garrison*,
480 U.S. 79 (1987)....................18

*McDonald v. United States*,
335 U.S. 451 (1948)....................2

*United States v. Abboud*,
438 F.3d 554 (6th Cir. 2005)....................4, 10

*United States v. Bertini*,
No. 23 CR. 61 (PGG), 2023 WL 8258334 (S.D.N.Y. Nov. 29, 2023)....................4, 5

*United States v. Cioffi*,
668 F. Supp. 2d 385 (E.D.N.Y. 2009)....................2, 5

*United States v. Clark*,
638 F.3d 89 (2d Cir. 2011)....................21

*United States v. Diaz*,
841 F.2d 1 (1st Cir. 1988)....................4, 10

*United States v. Gaines*,
No. 20-cr-126 (JBA), 2021 WL 4263375 (D. Conn. Sept. 20, 2021)....................3, 17

*United States v. Galpin*,
720 F.3d 436 (2d Cir. 2013)....................4, 6, 10, 19

*United States v. Ganias*,
755 F.3d 125 (2d Cir. 2014)....................6

*United States v. Garlick*,
No. 22-CR-540 (VEC), 2023 WL 2575664 (S.D.N.Y. Mar. 20, 2023)....................4, 19

*United States v. George*,
975 F.2d 72 (2d Cir. 1992)....................................................................................12

*United States v. Guzman*,
No. S5 97 CR 786 (SAS), 1998 WL 61850 (S.D.N.Y. Feb. 13, 1998)...............................4, 17

*United States v. Harvey*,
No. 21-CR-335 (SJ), 2022 WL 684050 (E.D.N.Y. Mar. 8, 2022) ..........................................5

*United States v. Hernandez*,
No. 09-CR-625 (HB), 2010 WL 26544 (S.D.N.Y. Jan. 6, 2010)...............................................2

*United States v. Kidd*,
386 F. Supp. 3d 364 (S.D.N.Y. 2019)...............................................................................4, 18

*United States v. Lauria*,
70 F.4th 106 (2d Cir. 2023) .......................................................................................................3

*United States v. Leon*,
468 U.S. 897 (1984) ..................................................................................................................5

*United States v. Lustyik*,
57 F. Supp. 3d 213 (S.D.N.Y. 2014)......................................................................................6, 7

*United States v. Metter*,
860 F. Supp. 2d 205 (E.D.N.Y. 2012)...................................................................... 6, 14, 20

*United States v. Moore*,
968 F.2d 216 (2d Cir. 1992) ...............................................................................................5, 21

*United States v. Nejad*,
436 F. Supp. 3d 707 (S.D.N.Y. 2020).........................................................................................7

*United States v. Singh*,
390 F.3d 168 (2d Cir. 2004) .......................................................................................................3

*United States v. Tairod Nathan Webster Pugh*,
No. 15-cr-116 (NGG), 2015 WL 9450598 (E.D.N.Y. Dec. 21, 2015) .....................................3

*United States v. Voustianiouk*,
685 F.3d 206 (2d Cir. 2012) .......................................................................................................2

*United States v. Wey*,
256 F. Supp. 3d 355 (S.D.N.Y. 2017)...........................................................................5, 6, 19

*United States v. Zemlyansky*,
945 F. Supp. 2d 438 (S.D.N.Y. 2013)..................................................................... 10, 11, 19

*Walczyk v. Rio*,
496 F.3d 139 (2d Cir. 2007) .......... 3

**Statutes**

18 U.S.C. §§ 1343.......... 10

**Rules**

Fed. R.Crim. P. 16 .......... 12, 14

**Constitutional Provisions**

U.S. Const. Amendment IV .......... *passim*

## PRELIMINARY STATEMENT

Defendant Edward James ("Mr. James") respectfully submits this memorandum of law in support of his motion to suppress all evidence obtained from two search warrants that the government obtained in the course of its investigation: (1) the April 28, 2025 warrant issued in the Northern District of Ohio directing Microsoft to disclose the contents of Mr. James's First Brands email account (the "Microsoft Warrant"); and (2) the November 14, 2025 warrant issued in the Southern District of New York directing Apple to disclose the entire contents of Mr. James's iCloud account (the "Apple Warrant," and together with the Microsoft Warrant, the "Warrants").

Throughout the affidavits submitted in support of the Warrants, Mr. James is referenced only tangentially and largely in the shadow of his older brother and co-defendant, Patrick James. Where the affidavits do address Mr. James specifically, the allegations against him are thin: one attributes conduct to [redacted] (Ex. A, Microsoft Aff. ¶ 19), and [redacted] (Ex. B, Apple Aff. ¶ 12(i)). Neither affidavit comes close to the particularized probable cause the Fourth Amendment demands. Compounding these constitutional defects, the Warrants lack the required temporal limitations required to tie the scope of the seizure to the conduct actually alleged against Mr. James, and they lack a showing of a sufficient nexus between the sweeping categories of information seized and the narrow allegations levied against him.

Evidence obtained from the Warrants should be suppressed on a further, independent basis. By the government's own admission, its responsiveness review of the materials obtained pursuant to the Warrants has still not been completed—in the case of the Microsoft Warrant, more than sixteen months after the government executed the warrant, such that the government continues to retain and access material well outside the scope of the seizure, in violation of the Fourth Amendment's requirement that a warrant be executed within a reasonable amount of time.

As set forth below, neither Warrant comports with the Fourth Amendment's requirements of probable cause, particularity, and reasonable scope as applied to Mr. James. The government cannot invoke the good-faith exception to salvage evidence obtained under Warrants that are, at a minimum, so facially deficient and lacking in any individualized showing as to Mr. James that no reasonably well-trained officer could have relied upon them. The evidence obtained under the Warrants should be suppressed for the independent reason that a search conducted pursuant to a warrant must be executed and reviewed within a reasonable time, and the government's continued, open-ended retention and access to the Warrants' returns exceed any reasonable period for executing the Warrants. Accordingly, the Court should therefore suppress all evidence derived from these unconstitutional searches and seizures.

## LEGAL STANDARD

### I. Fourth Amendment Requirements for Search Warrants

To protect against unreasonable searches and seizures, the Fourth Amendment states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Compliance with the Fourth Amendment Warrants Clause therefore "requires particularity and forbids overbreadth." *United States v. Cioffi*, 668 F. Supp. 2d 385, 390 (E.D.N.Y. 2009). "Although somewhat similar in focus, [overbreadth and particularity] are two distinct legal issues: (1) whether the items listed as 'to be seized' in the warrant were overbroad because they lacked probable cause and (2) whether the warrant was sufficiently particularized on its face to provide the necessary guidelines for the search by the executing officers." *United States v. Hernandez*, No. 09-CR-625 (HB), 2010 WL 26544, at *7 (S.D.N.Y. Jan. 6, 2010).

"The Fourth Amendment's requirements regarding search warrants are not 'formalities.'" *United States v. Voustianiouk*, 685 F.3d 206, 210 (2d Cir. 2012) (quoting *McDonald v. United*

*States*, 335 U.S. 451, 455 (1948)). Where a warrant fails to satisfy these requirements, the evidence obtained as a result must be suppressed. *See United States v. Tairod Nathan Webster Pugh*, No. 15-cr-116 (NGG), 2015 WL 9450598, at *20 (E.D.N.Y. Dec. 21, 2015) ("Suppression is the appropriate remedy for the fruits of a warrant that features one or both of [overbreadth or particularity] infirmities.").

### A. Probable Cause

"[P]robable cause to search is demonstrated where the totality of circumstances indicates a fair probability that contraband or evidence of a crime will be found in a particular place." *Walczyk v. Rio*, 496 F.3d 139, 156 (2d Cir. 2007). To establish probable cause, an affidavit must "establish[] a sufficient nexus between the criminal activities alleged" and the place or object to be searched. *United States v. Singh*, 390 F.3d 168, 182 (2d Cir. 2004). Probable cause to believe a person committed a crime is not, standing alone, probable cause to search that person's property or accounts: courts have "cautioned against confusing 'a fair probability that contraband or evidence of a crime will be found in a particular place' with 'probable cause to think that the person whose [items] are to be searched is implicated in the crime.'" *See United States v. Lauria*, 70 F.4th 106, 130 n.14 (2d Cir. 2023) (quoting *Ganek v. Leibowitz*, 874 F.3d 73, 82 (2d Cir. 2017)). While "a showing of nexus does not require direct evidence and may be based on reasonable inference from the facts presented based on common sense and experience," *Singh*, 390 F.3d at 182, the standard "does require more than a 'hunch.'" *Lauria*, 70 F.4th at 128 (citation omitted). "A finding of probable cause is especially essential in the context of smartphone searches" because of the immense potential for privacy violations. *See United States v. Gaines*, No. 20-cr-126 (JBA), 2021 WL 4263375, at *5 (D. Conn. Sept. 20, 2021).

A law enforcement affiant's training and expertise can supplement, but cannot substitute for case-specific facts. "Permitting a search warrant based solely on the self-avowed expertise of

a law enforcement agent, without any other factual nexus to the subject property, would be an open invitation to vague warrants authorizing virtually automatic searches of any property used by a criminal suspect." *United States v. Guzman*, No. S5 97 CR 786 (SAS), 1998 WL 61850, at *4 (S.D.N.Y. Feb. 13, 1998). Rather, an application must supply "enough case-specific evidence to nudge [an officer's] training and experience across the line from sheer speculation to probable cause." *United States v. Garlick*, No. 22-CR-540 (VEC), 2023 WL 2575664, at *6 (S.D.N.Y. Mar. 20, 2023).

The probable cause requirement also constrains the scope, including the temporal scope, of what a warrant may authorize the government to seize. A warrant's description of the items to be seized may not be "broader than can be justified by the probable cause upon which the warrant is based." *United States v. Galpin*, 720 F.3d 436, 446 (2d Cir. 2013). "[A] warrant is legally invalid for overbreadth to the extent it permits officers to search or seize items without probable cause that they contain evidence of a crime." *United States v. Kidd*, 386 F. Supp. 3d 364, 374 (S.D.N.Y. 2019). "Failure to limit broad descriptive terms by relevant dates, when such dates are available to the police, will render a warrant overbroad." *United States v. Abboud*, 438 F.3d 554, 576 (6th Cir. 2005) (holding that all evidence seized outside of the three-month period for which probable cause was established should have been suppressed). A warrant that "included permission to seize records . . . [dated before] the first instance of wrongdoing mentioned in the affidavit occurred" is similarly infirm. *United States v. Diaz*, 841 F.2d 1, 4-5 (1st Cir. 1988) (holding that a warrant was overbroad because it authorized the government to seize records between February and October, when the first instance of wrongdoing was mentioned in the affidavit).

Generally, "[a] magistrate judge's determination of probable cause to search is to be paid great deference by reviewing courts." *United States v. Bertini*, No. 23 CR. 61 (PGG), 2023 WL

8258334, at *4 (S.D.N.Y. Nov. 29, 2023) (citation omitted). Nevertheless, the deference owed to a magistrate's determination of probable cause does not preclude this Court from "properly conclud[ing] that . . . [a] warrant was invalid because the magistrate's probable-cause determination reflected an improper analysis of the totality of circumstances." *United States v. Leon*, 468 U.S. 897, 915 (1984) (citing *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983)). Although "suppression is not warranted if the police objectively relied on it in good faith" (*United States v. Harvey*, No. 21-CR-335 (SJ), 2022 WL 684050, at *7 (E.D.N.Y. Mar. 8, 2022), "[t]he good faith exception, however, does not apply '(1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable.'" *Id.* (quoting *United States v. Moore*, 968 F.2d 216, 222 (2d Cir. 1992)). "Suppression of evidence thus 'remains an appropriate remedy' where law enforcement agents lack 'reasonable grounds for believing that the warrant was properly issued.'" *Bertini*, 2023 WL 8258334, at *4 (quoting *Leon*, 468 U.S. at 915).

**B. Particularity**

"Particularity is the requirement that the warrant must clearly state what is sought." *Cioffi*, 668 F. Supp. 2d at 390 (citation omitted). The particularity requirement "is necessarily tied to the . . . probable cause requirement." *650 Fifth Ave. v. Alavi Found.*, 830 F.3d 66, 98 (2d Cir. 2016). This is because "[b]y limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Id.*

"Put differently, warrant must be sufficiently specific to permit the rational exercise of

judgment [by the executing officers] in selecting what items to seize." *United States v. Wey*, 256 F. Supp. 3d 355, 393 (S.D.N.Y. 2017) (citation omitted). Particularity is thus a distinct, though related, concept from probable cause and breadth: the former asks "whether the warrant was sufficiently particularized on its face to provide the necessary guidelines for the search by the executing officers," while the latter asks "whether the items listed as 'to be seized' in the warrant were overbroad because they lacked probable cause." *Id.* (citation omitted). A warrant "can be unconstitutionally infirm in two conceptually distinct but related ways: either by seeking specific material as to which no probable cause exists, or by giving so vague a description of the material sought as to impose no meaningful boundaries." *Id.* (citation omitted). Where the property to be searched is electronic data, the Second Circuit has stated that "the particularity requirement assumes even greater importance." *Galpin*, 720 F.3d at 446; *see also id.* at 447 ("The potential for privacy violations occasioned by an unbridled, exploratory search of a hard drive is enormous. This threat is compounded by the nature of digital storage.").

### C. Execution Within a Reasonable Period of Time

"Like all activities governed by the Fourth Amendment, the execution of a search warrant must be reasonable." *United States v. Lustyik*, 57 F. Supp. 3d 213, 229 (S.D.N.Y. 2014). "Law enforcement officers therefore must execute a search warrant within a reasonable time." *Id.* (citing *United States v. Ganias*, 755 F.3d 125, 136 (2d Cir. 2014); *see also United States v. Metter*, 860 F. Supp. 2d 205, 215 (E.D.N.Y. 2012)). Where a warrant authorizes the seizure of electronically stored information, "the Fourth Amendment requires the government to complete its review, *i.e.*, execute the warrant, within a 'reasonable' period of time." *Metter*, 860 F. Supp. 2d at 215. Reasonableness turns on "a careful case-by-case factual analysis because what may be appropriate under one set of facts and circumstances may not be so under another." *Id.* at 211.

Execution is not complete, for Fourth Amendment purposes, until the government has

finished its responsiveness review—that is, the identification by the prosecution team of which documents are responsive to the warrant (and thus subject to seizure) and which are not. *United States v. Nejad*, 436 F. Supp. 3d 707, 736 (S.D.N.Y. 2020) ("At the conclusion of its responsiveness review in April 2017, the D.A. had identified all of the documents from the entire data set properly seized under the warrants, and the execution of those warrants was thus complete."). Documents seized through searches conducted after the review's conclusion "exceed[] the scope of the warrant['s] authority" and are "subject to suppression unless 'the [government] meets its burden of demonstrating that those items fall within an exception to the warrant requirement.'" *Id.* at 736-37 (quoting *Lustyik*, 57 F. Supp. 3d at 230).

## ARGUMENT

### I. The Court Should Suppress the Microsoft Warrant Returns Because the Government's Search and Seizure of Mr. James's Email Account Violate the Fourth Amendment

#### A. Relevant Background

Two different United States Attorney's Offices have been responsible for the investigation into First Brands: the United States Attorney's Office for the Northern District of Ohio and the United States Attorney's Office for the Southern District of New York. Although the majority of the search warrants obtained by the prosecution team in this matter have been issued by magistrates in the Southern District of New York, the first search warrant obtained by the prosecution team was issued by a magistrate in the Northern District of Ohio. Specifically, on April 28, 2025, Magistrate Reuben J. Sheperd issued a warrant directing Microsoft to disclose the contents of Mr. James's First Brands email account, [redacted].[1] Ex. C, Microsoft Warrant App. Attach. A1. As to that account, the Warrant authorizes disclosure of [redacted]

[1] The warrant also sought the contents of three other email accounts associated with other First Brands employees.

[redacted] Ex. D, Microsoft Warrant App. Attach. B1(II). The supporting affidavit avers that there is probable cause to believe that [redacted][2]

### B. The Microsoft Warrant is Overbroad

The Microsoft Warrant is overbroad, both as to the scope of information it authorizes the government to seize and as to the time period over which it authorizes seizure.

As an initial matter, the affidavit's specific, dated factual allegations concerning Mr. James are sparse. The affidavit describes Mr. James [redacted] Ex. A, Microsoft Aff. ¶ 10. The earliest dated fact relating to Mr. James is a July 31, 2021 email concerning a [redacted] Ex. A, Microsoft Aff. ¶¶ 43-48. In a related August 2, 2021 email, Mr. James [redacted] *Id.* at ¶ 48. Nothing in the emails suggests that these transactions were

[2] The supporting affidavit also purported to establish probable cause for [redacted] which has not been charged here and which the affidavit linked only to two different email accounts (neither belonging to Mr. James). Ex. A, Microsoft Aff. ¶ 6.

illegitimate on their face or that Mr. James [redacted], let alone supports probable cause that his entire email account would contain evidence of the charged schemes.

The only other dated, factual allegation naming Mr. James is a claim, attributed to a former employee, that in approximately May 2022 [redacted] *Id.* at ¶ 19. An affidavit that [redacted] cannot supply probable cause specific to either one.

As a result, the seizure period the Microsoft Warrant exceeds what the affidavit's own showing can support. The government obtained authorization of the seizure of [redacted] Ex. D, Microsoft Warrant App. Attach. B1(I)(a). But the affidavit identifies no conduct involving Mr. James before July 2021. Indeed, the affidavit sets forth no allegedly criminal conduct *at all* that extends to 2020. The affidavit notes that First Brands [redacted] Ex. A, Microsoft Aff. ¶ 8, but this fact is set forth in a section labeled [redacted] in 2020. The earliest dated factual allegation actually involving Mr. James is the July 31, 2021 email chain. There is no language even generally supporting probable cause extending into 2020. The affidavit is simply silent as to the probable cause supporting a seizure period prior to 2021.

---

[3] Mr. Brumbergs has pleaded guilty in a separate case before the Court to eight counts of fraud and money laundering related to his employment at First Brands and is cooperating with the government.

The affidavit thus supplies no basis for reaching back a full 18 months, to January 1, 2020, to seize the contents of Mr. James's email account. "Failure to limit broad descriptive terms by relevant dates, when such dates are available to the police, will render a warrant overbroad," *Abboud*, 438 F.3d at 576, and a warrant that "included permission to seize records . . . [dated before] the first instance of wrongdoing mentioned in the affidavit occurred" is overbroad for that reason alone, *Diaz*, 841 F.2d at 4-5. The gap between the earliest dated conduct attributed to Mr. James and the warrant's chosen start date is itself evidence that the date was not selected with reference to any case-specific showing as to him, but was instead [redacted] As a result, all materials seized before the date of the first instance of Mr. James's alleged involvement in criminal activity in the affidavit (July 31, 2021) should be suppressed. *Abboud*, 438 F.3d at 576 (holding that all evidence seized outside of the three-month period for which probable cause was established should have been suppressed).

**C. The Microsoft Warrant Lacks Particularity.**

Independent of the overbreadth defects described above, the Microsoft Warrant fails to satisfy the particularity requirement. A warrant must "specify the items to be seized by their relation to designated crimes," *Galpin*, 720 F.3d at 446, and must not "leave to the unguided discretion of the officers executing the warrant the decision as to what items may be seized." *United States v. Zemlyansky*, 945 F. Supp. 2d 438, 453 (S.D.N.Y. 2013) (citation omitted). The Microsoft Warrant's description of items to be seized offers executing officers no meaningful guidance for distinguishing responsive material from the quantity of non-responsive material the warrant's undifferentiated categories necessarily sweep in. Most concerning, the warrant contemplated the seizure of:

[redacted]

[redacted]

Ex. D, Microsoft Warrant App. Attach. B1(II) (emphasis added). The warrant then lists a number of categories of items, the vast majority of which are [redacted]. However, the definition of the [redacted] An officer executing this warrant could conceivably seize *anything* because the scope of [redacted] is unknowable and the warrant provides no other guidance to the executing officer as to the scope of that language. This is precisely the kind of "unguided discretion" the particularity requirement is designed to prevent. *Zemlyansky*, 945 F. Supp. 2d at 453 (citation omitted).

Similarly, an officer executing this warrant has no principled way to determine, for any given document in Mr. James's email account, whether it is properly subject to seizure. The warrant authorizes the seizure of, among other things, business records such as articles of incorporation, bylaws, and subsidiary records, employee records, personnel files, and pay statements, all without specifying which Relevant Entity (which, again, is defined to include *unidentified* entities) or subject matter each category must relate to in order to fall within the warrant's authorization. The warrant also authorizes the seizure of [redacted]

[redacted] Ex. D, Microsoft Warrant App. Attach. B1(II)(o) (emphasis added)—an extremely broad category that provides little limitation on seizure by an executing officer. Simply put, the warrant does not sufficiently curtail the executing officer's discretion in determining what to seize. The returns of the Microsoft Warrant should therefore be suppressed. *United States v. George*, 975 F.2d 72, 76 (2d Cir. 1992) ("A failure to describe the items to be seized with as much particularity as the circumstances reasonably allow offends the Fourth Amendment because there is no assurance that the permitted invasion of a suspect's privacy and property are no more than absolutely necessary.").

### D. The Government Failed to Execute the Microsoft Warrant Within a Reasonable Time

By the government's own admission, its responsiveness review of the materials obtained pursuant to the Microsoft Warrant remains incomplete more than sixteen months after the warrant was issued. On March 25, 2026, the government's filter team made an initial production to the defense. On April 15, 2026, the government represented that it expected to have produced all but one responsive report by April 27, 2026. Gov't Opp. to Mot. for Adjournment, Dkt. No. 45 at 5. On April 27, 2026, the government made a production of 841,289 responsive documents. On April 30, 2026, the government represented that its Rule 16 discovery was "substantially complete." Gov't Ltr., Dkt. No. 53. at 1. Notwithstanding that representation, on May 12, 2026, the government made a further production of an additional 411,468 responsive documents. And most significantly, in an August 11, 2026 letter from Mr. James to the government, the defense asked the government "Has the government completed its responsiveness review of all search warrant returns? If so, when did it complete the responsiveness review for each warrant? If not, when does it anticipate completing those reviews and when does it intend to provide the complete set of

responsive materials to the defense?" Ex. E, Def. Ltr. Dated Aug. 11, 2026 at 1. In an August 21, 2026 letter, the government responded that "[r]esponsiveness reviews are ongoing" without identifying a date by which the government anticipates completing the reviews. Ex. F, Gov't. Ltr. Dated Aug. 21, 2026 at 1.

Seeking clarity on the government's response, in an August 28 letter from Mr. James to the government, the defense asked the government to "(1) provide the date on which the responsiveness review began and by which member(s) of the case team (including prosecutors, agents, or staff working for or with the U.S. Attorney's Office for the Northern District of Ohio), and (2) provide any materials or memoranda documenting the responsiveness review process by the government team (including any prosecutors, agents, or staff working for or with the U.S. Attorney's Office for the Northern District Ohio)," Ex. G, Def. Ltr. Dated Aug. 28, 2026 at 1, and to confirm whether "all responsiveness review for all search warrants in this case are currently being held open by the government." *Id.* at 2. The defense also asked the government to confirm whether "the ongoing reviews for responsiveness are limited to the materials just released to the prosecution team by the filter team, and that the government is not continuing to review materials from the entirety of any search warrant return" and to "confirm the date on which the materials from the filter team were released to the government and the date on which the responsiveness review of those materials began." *Id.*

In its September 3 response, the government confirmed that its responsiveness reviews (for all search warrants) remain "ongoing," but "decline[d] to enumerate the particulars of the Government's responsiveness review process." Ex. H, Gov't. Ltr. Dated Sept. 3, 2026 at 1-2. Giving the back of the hand to the Fourth Amendment's reasonableness requirement, the government maintained that it "is entitled to continue searching the entirety of each search warrant

return" and doubled down on its determination to "decline to enumerate the Government's internal review process[.]" *Id.* at 2.

The government claims that it has failed to complete any responsiveness review of any search warrant, in part because the search warrant returns "contain material subject to privilege assertions that may be challenged by the Government." *Id.* at 1. However, the material over which Mr. James has asserted privilege is limited to a small subset of documents (fewer than 400 documents across both Warrants) from the total search warrant returns, and the government could easily have completed their responsiveness review of the remaining set and segregated those documents from further review. In addition, Mr. James provided his privilege log to the government on April 10, 2026. If the government wanted to challenge those privilege assertions, they have had over four months to do so. The government should not be permitted to use the defense's timely privilege assertions, and the government's dilatory failure to act on those assertions, as an excuse for not completing the execution of the Warrants.

The government has been reviewing Mr. James's email account for sixteen months, is not done, and has set no timeline for being done. This is despite earlier and repeated representations by the government that it was prepared to complete Rule 16 discovery (which would include responsive search warrant material) consistent with a *July* trial date. *See, e.g.*, Gov't Opp. to Mot. for Adjournment, Dkt. No. 45 at 1 (the government maintained that it "has and will continue to produce discovery on a timetable that enables [the defendants] to prepare for trial on [the then-existing] schedule"). This over sixteen-month delay in completing a responsiveness review of Mr. James's e-mail account exceeds the fifteen-month delay *Metter* found unreasonable. *See Metter*, 860 F. Supp. 2d at 210, 212 (finding that "the government's more than 15-month delay in reviewing the seized electronic evidence [. . .] constitutes an unreasonable seizure under the Fourth

Amendment.”). The government’s continued access to the entirety of the Microsoft Warrant returns—material that has not yet been fully sorted into responsive and non-responsive categories—is the type of prolonged, unbounded retention that the Fourth Amendment’s requirement that warrants must be executed within a reasonable time is designed to prevent.

In addition, the government has declined to provide any documentation or information that would allow the defense or this Court to conclude that it is, in fact, reasonably executing the Microsoft Warrant, or any warrant. Of particular concern for Mr. James is that members of the prosecution team in the Northern District of Ohio may not have begun a responsiveness review in a timely way or at all. Such a failure would not be reasonable. However, despite the defense’s limited request for the date on which the responsiveness review began, the government has refused to provide even that information.

At a minimum, the Court should direct that the government provide to it and to the defense the following information about the Warrants, so that both the Court and Mr. James can evaluate the reasonableness of the search warrant execution and whether additional motions are appropriate:

(1) the date on which the responsiveness review began and by which member(s) of the case team (including prosecutors, agents, or staff working for or with the U.S. Attorney’s Office for the Northern District of Ohio);

(2) any materials or memoranda documenting the responsiveness review process by the government team (including any prosecutors, agents, or staff working for or with the U.S. Attorney’s Office for the Northern District Ohio);

(3) the date on which the materials from the filter team were released to the government and the date on which the responsiveness review of those materials began; and

(4) whether the prosecution team is continuing to review the entire contents of the search

warrant return or whether it has segregated any previously reviewed materials from further review.

This disclosure is not overly burdensome to the government and is necessary to allow Mr. James to adequately mount a defense and evaluate whether additional motions are appropriate.

## II. The Court Should Suppress the Apple Warrant Returns Because the Government's Search and Seizure of Mr. James's iCloud Account Violated the Fourth Amendment

### A. Relevant Background

On November 14, 2025, in the Southern District of New York, Magistrate Robyn F. Tarnofsky issued a warrant directing Apple to disclose, for the period January 1, 2020 to the date of the warrant, essentially every category of data Apple's iCloud service stores from an iCloud account associated with Mr. James, identified by [redacted]. Ex. I, Apple Warrant Attach. A(I). Among other things, the warrant provided for the seizure of subscriber and billing information, device information, Internet Protocol (IP) address records, address book and contact information, telephone and FaceTime call histories and voicemails, all emails, all text, SMS, MMS, and iMessage messages, all photographs and videos together with associated metadata including GPS location, all documents (including iCloud Drive and iWork files), web and search history, bookmarks, all third-party application data including WhatsApp, location data, and complete iOS device backups. *Id.* at Attach. A(II).

The supporting affidavit devotes its probable cause section almost entirely to [redacted]. As with the Microsoft Warrant, its specific, dated allegations concerning Mr. James are starkly limited. In fact, the supporting affidavit does not even attempt to establish probable cause that Mr. James engaged in multiple of the alleged schemes–there is no mention of Mr. James at all in the probable cause subsections regarding false and misleading financial statements, off balance sheet debt, or misappropriation. The principal allegation purporting to support probable cause as to Mr. James is the general claim

that he [redacted] Ex. B, Apple Aff. ¶ 14. To establish that Mr. James's iCloud account in particular would contain evidence of the offenses under investigation, the affidavit [redacted] (*id.* at ¶ 24(b)(v)-24(b)(ix)), [redacted] (*id.* at ¶ 25). Yet the Apple Warrant permitted the government to obtain far more than those text messages, or even communications generally: it reaches every photograph and video, all third-party application data, complete device backups, and location data, none of which the affidavit ties to any specific fact concerning Mr. James.

### B. The Apple Affidavit Does Not Establish Probable Cause to Seize the Entirety of Mr. James's iCloud Account

The Apple Warrant likewise fails to establish probable cause to seize the entirety of Mr. James's iCloud account, and the categories of data it authorizes the government to obtain far exceed what any probable cause showing in the affidavit can support.

The affidavit's showing as to Mr. James's iCloud account rests entirely on a handful of text messages (*id.* at ¶ 24(b)(v)-24(b)(ix)), public reporting of supposed [redacted] (*id.* at ¶ 12(i)), and the affiant's entirely conclusory and generalized assertions about [redacted] (*id.* at ¶ 25). "A finding of probable cause is especially essential in the context of smartphone searches" given the immense potential for privacy violations, *see Gaines*, 2021 WL 4263375, at *5, and generalized law enforcement expertise, standing alone and without case-specific corroboration, cannot substitute for the individualized showing the Fourth Amendment requires. *See Guzman*, 1998 WL 61850, at

*4. This is not a case where mere training-and-experience language supplements a robust, case-specific factual record; here, it is the entirety of the government's justification for reaching beyond the text messages themselves into every other category of data an iPhone or iCloud account can hold.

That gap between the affidavit's thin showing and the warrant's sweeping authorization is dispositive. The particularity and probable cause requirements exist precisely to ensure that "a search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *650 Fifth Ave.*, 830 F.3d at 98 (quoting *Maryland v. Garrison*, 480 U.S. 79, 84 (1987)). Yet the Apple Warrant authorizes the government to obtain far more than text messages, or even communications generally: it reaches every photograph and video (with associated GPS metadata), all iCloud Drive and iWork documents, web and search history, bookmarks, all third-party application data including WhatsApp, complete device backups, address book and call history data, and location data. None of which the affidavit ties to any specific fact concerning Mr. James. "[A] warrant is legally invalid for overbreadth to the extent it permits officers to search or seize items without probable cause that they contain evidence of a crime." *Kidd*, 386 F. Supp. 3d at 374.

At most, the affidavit establishes probable cause to search for and seize communications from Mr. James's iCloud account. It does not even begin to establish probable cause for the wholly separate, non-communication categories of data the warrant nonetheless authorizes the government to obtain and search. The affidavit's silence on this point is telling. It does not even offer a cursory explanation as to why factoring agreements, borrowing-base certificates, or financial statements would be expected to reside on a personal iCloud account. Nor does it identify any specific photograph or video, or information from a Find My iPhone account, that it expects

to be relevant to the charged conduct. An affiant's bare assertion that such categories [redacted] Ex. B, Apple Aff. ¶ 24(f), is the same brand of generalized reasoning courts have rejected as a substitute for case-specific probable cause. *See Garlick*, 2023 WL 2575664, at *6.

This gulf between the affidavit's thin, communications-based showing and the sweeping, all-encompassing seizure authorization the warrant grants is precisely the kind of overbreadth that "exceed[s] the scope of otherwise duly established probable cause." *Wey*, 256 F. Supp. 3d at 382. A warrant's description of the objects to be seized may not be "broader than can be justified by the probable cause upon which the warrant is based." *Galpin*, 720 F.3d at 446.

Because the Apple Warrant's authorization for items wholly unrelated to the proffered allegations rests on nothing beyond generalized training-and-experience assertions, untethered to any fact particular to Mr. James, the warrant is unsupported by probable cause and must be suppressed to the extent it exceeds the narrow universe of communications the affidavit actually addresses.

### C. The Apple Warrant Lacks Particularity

The Apple Warrant's list of items to be seized suffers from the same particularity defect as the Microsoft Warrant. The warrant's undifferentiated list of iCloud content categories—spanning subscriber information, device data, photographs, videos, documents, browsing history, third-party application data, and complete device backups—gives executing officers no principled basis for determining which of these categories, if any, contains evidence related to the designated crimes. *See Galpin*, 720 F.3d at 446 ("[T]he warrant must specify the items to be seized by their relation to designated crimes") (citation omitted). Instead, the warrant "leave[s] to the unguided discretion of the officers executing the warrant the decision as to what items may be seized," *Zemlyansky*, 945 F. Supp. 2d at 453 (citation omitted), effectively authorizing a comprehensive review of Mr.

James's entire digital life untethered to the specific, dated facts the affidavit actually alleges against him.

### D. The Government Failed to Execute the Apple Warrant Within a Reasonable Time

Evidence obtained from the Apple Warrant should likewise be suppressed on the independent ground that the government has failed to complete its responsiveness review within a reasonable time. As with the Microsoft Warrant, the government's responsiveness review of the Apple Warrant returns remains "ongoing," and the government has not identified when that review began, what process governs it, or when it will conclude. Nearly 10 months have now passed since the Apple Warrant was issued on November 14, 2025, and this open-ended delay mirrors, and independently supports, the same defect infecting the Microsoft Warrant: a search executed pursuant to a warrant must be completed within a reasonable time, and prolonged, unbounded retention and access to unreviewed material exceeds that constitutional limit. *See Metter*, 860 F. Supp. 2d at 210, 212. As with the Microsoft Warrant, the government has declined to provide the defense or the Court with any documentation establishing that it is, in fact, reasonably executing the Apple Warrant, including the date the responsiveness review began, the personnel conducting it, or any materials documenting that process. The Court should therefore direct the government to provide the same categories of information as to the Apple Warrant that Mr. James requests as to the Microsoft Warrant, so that the Court and Mr. James can evaluate the reasonableness of the Apple Warrant's execution.

## III. There Could Be No Objectively Reasonable Reliance on the Facially Deficient Warrants

The government cannot rely on the good-faith exception to save evidence obtained under the Warrants. While "most searches conducted pursuant to a warrant . . . fall within [the] protection" of the good-faith exception, the Supreme Court has recognized four circumstances in

which the exception does not apply: (1) "where the issuing magistrate has been knowingly misled"; (2) "where the issuing magistrate wholly abandoned his or her judicial role"; (3) "where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable"; and (4) "where the warrant is so facially deficient that reliance upon it is unreasonable." *United States v. Clark*, 638 F.3d 89, 100 (2d Cir. 2011) (quoting *Moore*, 968 F.2d at 222)).

The third and fourth circumstances are squarely presented here. As detailed above, each Warrant's seizure authorization, as applied to Mr. James, is untethered to any case-specific showing of when his alleged conduct began or what categories of evidence his accounts were likely to contain. A "bare-bones" affidavit is one that is "totally devoid of factual circumstances to support conclusory allegations." *Clark*, 638 F.3d at 103. While the affidavits here are not bare-bones in the sense of containing no facts whatsoever, the facts they contain as to Mr. James specifically—as opposed to Patrick James—are astoundingly thin, and the seizure authorizations sufficiently disconnected from those facts, that no reasonably well-trained officer could have believed in good faith that the Warrants, as written, were properly limited to material as to which probable cause had been established.

Deference presupposes a warrant application that gave the magistrate an adequate basis to cabin the scope of the search to material connected to the individual whose property is being searched. Where, as here, the seizure authorization for Mr. James's accounts was [redacted], reliance on the resulting warrants cannot be considered objectively reasonable.

This is particularly true as to the Microsoft Warrant's temporal defect. The affidavit's own facts place the earliest conduct involving Mr. James in mid-2021, yet the warrant's time period for

the seizure reaches back to January 1, 2020 without explanation. No reasonable officer reviewing that affidavit could have concluded that probable cause supported seizure of eighteen months of email content for which the affidavit describes no conduct whatsoever involving Mr. James (and for a significant portion of that time period, describes no criminal conduct at all). Nor could a reasonable officer executing the Apple Warrant have believed that a thin set of text messages supported seizure of Mr. James's photographs, videos, browsing history, and complete device backups; categories the affidavit never attempts to connect to the alleged offenses. In both instances, the disconnect between the affidavit's factual showing and the warrant's seizure authorization was severe enough to place a reasonably well-trained officer on notice that the warrant could not lawfully support the search actually conducted.

## CONCLUSION

For the reasons set forth above, Mr. James respectfully requests that the Court suppress all evidence obtained, directly or derivatively, from the Microsoft Warrant and the Apple Warrant, and grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
September 4, 2026

Respectfully submitted,

BRACEWELL LLP

By: /s/ Seth D. DuCharme

Seth D. DuCharme
Nicole Boeckmann
David A. Shargel
31 West 52nd Street, 19th Floor
New York, New York 10019
(212) 508-6100
seth.ducharme@bracewell.com
nicole.boeckmann@bracewell.com
david.shargel@bracewell.com